PHEBE A. BLACK v. MAGGIE E. BLACK *et al.*

No. 12,005. (68 Pac. 662.)

MAGGIE E. BLACK *et al.* v. PHEBE A. BLACK.

No. 12,126. (68 Pac. 662.)

SYLLABUS BY THE COURT.

1. HUSBAND AND WIFE — *Death of Husband — Partition.* Where a husband, acting under a power of attorney, collects money due his wife, and with such money pays the purchase-price of a tract of land, taking the legal title in his own name, but thereafter disclaims his ownership of the land and refers to it as the property of his wife, after his death partition of the land will not be awarded at the suit of the children of the husband and wife claiming an interest in the property as his heirs-at-law as against the widow claiming to own the property.

2. FRAUD — *Limitation of Action — Constructive Notice Sufficient.* The phrase, "until discovery of the fraud," in subdivision 3 of section 18 of the code (Gen. Stat. 1901, § 4446), which provides the limitation of two years in case of " action for relief on the ground of fraud," and which also provides that " the cause of action in such case shall not be deemed to have accrued until the discovery of the fraud," does not necessarily mean until the party complaining had *actual notice* of the fraud alleged to have been committed, for constructive notice of the fraud is sufficient to set the statute in motion even though there may be no actual notice.

44—64 KAN.

| 64 | 689 |
| 66 | 308 |

| 64 | 689 |
| 67 | 245 |
| 67 | 246 |
| e67 | 708 |

| 64 | 689 |
| f76 | 171 |
| 76 | 172 |
| 77 | 400 |

| 64 | 689 |
| 82 | 162 |
| f82 | 448 |

Black v. Black.

Where the means of discovery lie in public records required by law to be kept, which involve the very transaction in hand, and the interests of the parties to the litigation, the public records themselves are sufficient constructive notice of the fraud to set the statute in motion.

3. ―――― *Accounting to Heirs by Administrator Guardian― Limitation of Action.* When an action for relief on the ground of fraud is brought by children against their mother, who acted as administratrix of their father's estate, and also as their guardian, but is not brought until eighteen years after the estate was settled, and eight years after the guardian's account was closed and the youngest child had arrived at majority, a finding from the evidence that the fraud was discovered by an actual examination of the accounts of their mother with the probate court, made within two years of the date of the commencement of the action, is not a sufficient finding that the fraud was not discovered prior to that time, to remove the case from the operation of the statute of limitations.

Error from Miami district court; JOHN T. BURRIS, judge. Opinion filed April 5, 1902. Reversed in part, and affirmed in part.

*James D. Snoddy,* for plaintiffs in error.

*W. P. Dillard, L. C. Boyle,* and *A. Lane,* for defendants in error.

The opinion of the court was delivered by

POLLOCK, J.: These are separate proceedings in error between the same parties, prosecuted from one decree. The records are exceedingly voluminous. The facts to be gleaned therefrom, briefly stated, are as follows: James G. Black died intestate on the 14th day of May, 1877, leaving surviving him his widow, Phebe A. Black, and eight children, whose names and dates of birth are as follows: Elizabeth E., December 16, 1861; William R., April 23, 1863; Charles N., April 6, 1865; Anna J., July 25, 1867; Maggie E., February 21, 1869; Ida E., January 7, 1871; Lillie

H., April 19, 1872; Alfred J., April 11, 1877. One child, a son, born December 14, 1874, died August 11, 1875. At the time of his death, James G. Black was the owner of what is called in the record the "home place," including the Paola farm, containing 1794 acres, and a large amount of personal property. He also held in his name the legal title to 365 acres of land designated in the record as the "Big Leg place," which land was purchased by James G. Black and title taken in his name with money of Mrs. Black, by him collected under power of attorney in the state of Iowa from the estate of the father of Mrs. Black. After the decease an inventory and appraisement of the personal property of the estate was made, estimating the value thereof, less property set off to the widow and children, to be $14,493.61. The widow, the brother of the deceased, William Black, and the brother of the widow, Nathan Dupont, were duly appointed and qualified as administrators of the estate, giving bond in the sum of $20,000.

At the first annual settlement of the estate the administrators charged themselves with the appraised value of the personal estate. It appears from the record that the administrators acted upon the assumption that the widow had the right to take the personal property at its appraised value and to account to the court for the same; that she did so do, and that she proceeded in the handling of the property as though it were her own property, and that the administrators continued the administration of the estate, accounting only for its appraised value and interest thereon at the rate of seven per cent. for one year to the court. Annual settlements were made each year, and at the expiration of three years notice of final settlement was given, and on July 26, 1880, an order of final settle-

ment was entered in the probate court, the administrators and their bondsmen discharged, and the estate closed. Upon application of the widow, she was appointed guardian of the estate of her then minor children, and in her first account as guardian charged herself with $7366.81, the same being one-half of the amount remaining on hand at the date of the final settlement of the administrators, as shown thereby. On the 22d day of November, 1890, all of the children, with the exception of Alfred J., having arrived at majority, the following order was made by the probate court in the guardian proceedings :

"Now, on this 22d day of November, A. D. 1890, comes Phebe A. Black, guardian, and filed her annual settlement with said estate, and the court finds a balance in her hands belonging to the said heirs of the sum of $8971.09 ; and further, that William R., Charles N., Anna J., Maggie E., Ida E. and Lillie H. Black, having arrived at the age of maturity, it is ordered the said guardian pay to them their full distributive share of $1121.38 each, and file receipts therefor in this court, at which time she, together with the sureties upon her bond, will be discharged from further responsibility as to the heirs that have arrived at the age of majority. It is further ordered that the said Phebe A. Black pay to Elizabeth E. Black, heir of James G. Black, the sum of $1121.38, and file her receipt therefor.

JOHN C. COLLINS, *Probate Judge.*"

Charles N. Black was present in court at the time this order was made. On the 15th day of December, 1890, the following order was made in the guardian proceedings :

"Now, on this 15th day of December, 1890, comes Phebe A. Black and files her receipts in full for full distributive shares of the personal estate of James G. Black, deceased, from Anna J. Black, Ida E. Black,.

Maggie E. Black, William R. Black, Charles N. Black, Lillie H. Black, and Elizabeth E. Black, and it appearing to the court that said heirs have arrived at the age of majority, it is further ordered that said guardian, together with the sureties on her bond, be discharged from further responsibilities from this date.         John C. Collins, *Probate Judge.*"

To each of the children of age the guardian paid the sum of $1121.38 and took the following receipt:

"Paola, Kan., November, 1890.
"Received of Phebe A. Black, guardian, the sum of $1121.38, one thousand, one hundred and twenty-one dollars and thirty-eight cents, being the full amount due me as my distributive share in the personal property of the estate of James G. Black, deceased."

The receipt taken from Elizabeth Black was in the same form, except the word "guardian" was omitted therefrom, she being of age at the time the guardian proceedings were instituted.

During the period of administration Mrs. Black bought out of money in her hands, and took title in herself to, 635 acres of land at a cost of $2384. During the period of guardianship she purchased and took title in her own name to 1154 acres of land, and paid therefor $3146. After November 22, 1890, the time settlement was made with all of the children except the youngest, Alfred J., she purchased and took title in her own name to 690 acres of land, for which she expended $8076. These tracts of land are denominated in the record "acquired lands." The record further shows that from the year 1879 to the date of this action the widow paid out of the common fund taxes assessed against the different properties in the sum of $12,264.50; that she placed improvements upon the home property from the same source of the value of $10,000; that she managed the property

with great intelligence and prudence; during all the years worked hard; maintained a good home for herself and the children; gave the children a common-school education, and then sent them to the best colleges and universities in the state; paid for their education out of the common fund; fitted them for teaching and other useful occupations in life; during all the time provided them free of charge with all the necessaries and many of the luxuries of life, and in every way, with the assistance of the children, built up, increased, and cared for the large property in her hands, at the same time rearing her children to useful manhood and womanhood.

This action was brought on the 29th day of October, 1898, by Maggie E. Black, for the purpose of obtaining a decree of partition of all the lands mentioned herein; that is to say, the "home place," including the Paola farm, the "Big Leg place," and the "acquired lands"; and also for the purpose of obtaining a decree setting aside as fraudulent and void the administration and guardian proceedings, and for an accounting with her mother of the personal estate of her father. Her sisters and her brother Charles N. filed answers adopting the allegations of her petition, and by way of cross-petition demanded the same relief demanded by plaintiff. Her brothers William R. and Alfred J. refused to join in an action against their mother.

The widow, in answer, admitted the "home place" and Paola farm to be subject to partition in the proportion of ten-eighteenths to herself and one-eighteenth to each of the children living. The "Big Leg" lands and the "acquired lands" she claimed as her own property, denied any fraud in the administration or guardian proceedings, and pleaded the statute of lim-

itations in bar of such action and the accounting demanded.

A referee was appointed, who heard the evidence and made findings of fact and conclusions of law based thereon. These findings and conclusions of the referee, in so far as the "home place" was concerned, were adopted by the trial court, and the decree thereon was satisfactory to all parties. In so far as they refer to the "Big Leg place," they were modified by the court, and this property was decreed to the widow free from partition. From this decree Maggie and her brother and sisters contesting with their mother prosecute error in case No. 12,126. The conclusions of law of the referee as to the "acquired lands" and the settlement of the personal estate and the guardian proceedings are against the widow, and were adopted by the trial court, and a decree entered against her setting aside as void the administration and guardian proceedings and stating an account between her and the children as to the personal property of her deceased husband. Judgment was entered thereon, and a decree of partition of the "acquired lands." From this portion of the decree and judgment the widow brings error in case No. 12,005.

We shall first consider and dispose of case No. 12,126, which involves the property designated in the record as the "Big Leg" place. It is altogether clear from the evidence that this property was purchased with money coming to Mrs. Black from her father's estate; that her husband, James G. Black, under power of attorney from her, collected this money in Iowa, and out of the money so collected paid the purchase-price of this land, and took the title thereto in his name; that at no time did he claim to own the land, but upon all occasions spoke of it as his wife's property.

The finding of the referee from the evidence, as modified by the court, is as follows :

"3. At the time of his death the legal title to the following described lands was vested in James G. Black, and he was in possession thereof, to wit : (Description of land.) Said lands once belonged to an Indian known as 'Big Leg,' and are hereinafter referred to as the 'Big Leg' place. This tract was purchased by James G. Black in his own name, and was conveyed to him by warranty deed dated March 14, 1876, but was paid for with money of Phebe A. Black which came from her father's estate, and was so used by her husband in purchasing said land in his own name, and for the use of Phebe A. Black, his wife, and he so received said deed and held said land in trust for her."

The conclusion of law based upon this finding, as modified by the trial court, reads :

"That the tract of land referred to and known as the 'Big Leg' place should be held and treated as the separate property of defendant Phebe A. Black. She is the equitable owner of the whole of said tract of land, and is entitled to a judgment and decree of the court confirming her right and title to the same."

Upon this finding of fact, and conclusion of law based thereon, a decree was entered in favor of the widow. We have no hesitation in saying that this finding of fact is amply sustained by the evidence found in the record. Section 7882 of the General Statutes of 1901, concerning "Trusts and Powers," provides :

"The provisions of the section next before the last shall not extend to cases where the alienee shall have taken an absolute conveyance in his own name without the consent of the person with whose money the consideration was paid, or where such alienee in violation of some trust shall have purchased the land with moneys not his own ; or where it shall be made

to appear that by agreement and without any fraudulent intent the party to whom the conveyance was made, or in whom the title shall vest, was to hold the land or some interest therein in trust for the party paying the purchase-money or some part thereof.''

The object of this statute was to promote justice and to prevent fraud, not to encourage it. (*Kennedy v. Taylor*, 20 Kan. 558.) To compel a partition of this property, in which the father neither had nor claimed a dollar of beneficial interest, at the suit of the children as his heirs, against the widow whose money was expended in the purchase by the husband while acting in a trust capacity, merely because the naked, legal title was taken in his name, would be a perversion of justice and not a compliance with law. That James G. Black, having paid the purchase-price with money not his own but the property of his wife, and having taken title in his own name, would, in equity, have been decreed to hold this title for the benefit of his wife, seems clear. That it should now be decreed to the wife, free from the demands of his children as his heirs, under the provisions of the statute, seems equally equitable, just, and entirely free from doubt. In *Fawcett v. Fawcett and others*, 85 Wis. 332, 55 N. W. 405, 35 Am. St. Rep. 844, it was held :

''Plaintiff's husband purchased land with her money, and, contrary to her direction, took the title in his own name. They occupied the land together as a homestead until his death, which occurred more than twenty years after she learned that the title was in his name. He had never asserted any right to the land or denied that it equitably belonged to her, and had promised to have the title vested in her. *Held*, that plaintiff had not been guilty of *laches* which would defeat an action by her against her husband's heirs, brought soon after his death to enforce a resulting trust in her favor in the land.''

It follows that the decree on this branch of the case is right and must be affirmed.

We shall next consider case No. 12,005, and in so doing we are of the opinion, from the findings of the referee adopted by the trial court, that the serious question for our determination is the construction and application of the statute of limitations. It must be conceded that in law the widow had not the right to take the personal property at its appraised value and account to the court only for such value, although it should be shown the property was appraised at its full value, and thus brought more to the estate than it would have brought at public or private sale conducted under order of the court. It must also, we think, be conceded that the widow, acting in the trust capacity of administratrix and guardian for her children, did not have the right to speculate with the trust funds for her individual profit, and that the law would require of her a full account of such profits with her *cestui que trustients*. But the question remains, under the findings made by the referee from the evidence, whether the children contesting with their mother at the date of the commencement of this action were barred from maintaining the same and obtaining the relief demanded, both as to an accounting of the personal estate of the deceased and to participation in the acquired lands, as the acquired lands must be treated as the product of the administration of the estate or the accumulation from the profits of the guardianship, if the children shall be found entitled to participate therein. In other words, it is clear that if the statute barred the accounting demanded of their mother by the children, it also barred any recovery upon such accounting whether upon money demand or by way of participation in property

by her purchased during the period of administration and guardianship.

The ground upon which the children demand relief from the settlements made by their mother and her coadministrators, and their mother as guardian of their estate in the probate court, is that such settlements were fraudulently made. Waiving the question as to whether final settlement of the administrators may be assailed and declared void in an action in which all the administrators living are not parties, because not raised, it will be remembered that on November 22, 1890, the guardian's account as to all the contesting children was closed; that the youngest contesting child was at this time of full age and the oldest almost twenty-nine years of age, each and all in the full possession of their mental faculties, and laboring under no existing disability; that as to each and all of the contesting children at this time, whatever cause of action they may have, had accrued; also, that at this time each of said children received from their mother the sum of $1121.38, and each signed a receipt in which it was expressly stated that this sum was in full of their distributive share in the personal property of their father's estate, and that this action was not commenced for the period of almost eight years thereafter. In the absence of any existing disability, the third clause, section 18 of the code (Gen. Stat. 1901, § 4446), provides that an action for relief on the ground of fraud can only be brought within two years after the cause of action accrues, with the proviso that "the cause of action in such case shall not be deemed to have accrued until the discovery of the fraud." Hence, in this case, it was incumbent upon plaintiff, and those united with her in interest, as a condition precedent to their right of recovery, to al-

lege and prove the fraud of their mother not to have been discovered until within two years prior to the date of their action. (*Larimer v. Knoyle*, 43 Kan. 338, 23 Pac. 487; *Myers v. Center*, 47 id. 324, 27 Pac. 978.) Treating the pleadings in this case as containing sufficient allegations upon this point, and the findings of fact made by the referee and adopted by the trial court as fully supported by the evidence, are such findings sufficient to take the case out of the statute and bring it within the exception quoted? The findings of the referee upon this branch of the case are as follows:

"25. It was the understanding of Mrs. Black and the children that there should be no division of the real estate until after Alfred J. Black came of age, and the children understood and expected that at that time not only the home place should be divided, but that all the lands, including the Big Leg place, and the acquired lands should be divided, and the personal property and effects then remaining of said estate and growing out of it should be then distributed.

"26. In the spring of 1898, after Alfred had reached majority, the plaintiff requested Mrs. Black to have the estate divided, including the acquired lands and the Big Leg place, which request was refused. This refusal was made known to the other children, whereupon they (except William R. and Alfred J.) examined the records concerning said estate in the probate court and the said accounts of the administration and guardianship, and afterwards commenced this action.

"27. Before such examination in the probate court, which was in or about June, 1898, the said children did not know how said accounts had been made up or their contents; they had never seen them nor had such accounts, or any of them, nor the substance or items thereof, ever been presented to them or brought to their knowledge, except to Charles; the knowledge gained by him was at the settlement of the guardian's

account (November 22, 1890) as stated in the thirteenth finding.

"28. The said children did not know and had not discovered prior to June, 1898, the fact that Mrs. Black had not been charged with interest on money loaned by her, or the proceeds of stock sold, or rents received, or money from pasturage, or profits and increase of said business, nor were they informed on the amounts so received, but had at all times understood that the entire property, including the acquired lands, profits and increment was being kept together for the benefit of all until Alfred should become of age, and never knew that Mrs. Black claimed all such property, except the home place and the Paola farm, until the spring of 1898, when she so informed the plaintiff.

"29. Said children, except William R., signed the receipts in November, 1890, without any explanation being made or asked, because requested to do so by their mother, in the full belief and confidence that their mother was properly managing the property for their mutual interests; that such distribution was only partial; that the acquired lands belonged to the estate, and that a full division would be made when Alfred attained majority."

From the above findings and the decree based thereon, it is clear that both the referee and the trial court proceeded upon the theory that the fraud of the mother was discovered by the children when her accounts in the probate court were first examined by them, and, as this examination was not made until the spring of 1898, that their cause of action based thereon should be deemed to have accrued of that date; and, further, that although the receipts signed by the children expressly stipulated upon their face to be in full of their distributive share in their father's personal estate, and although the same were signed by the children, grown to full manhood and woman-

hood, well educated, and in full possession of their mental vigor, because such receipts were not explained to them by the mother they had the right wholly to ignore their express terms and treat their act as nonexistent. While the receipts given, although in express terms stating the amount received to be in full of their distributive share in the personal estate of their deceased father, were only *prima facie* evidence of the correctness of the amount due, and hence subject to impeachment, explanation and correction, yet they afforded ample notice to the children signing that the mother asserted and would contend the amount paid to be in full and not partial, and the children signing were thus put upon inquiry as to the correctness of the amount distributed, which inquiry it was imperative should be prosecuted with diligence, and that seasonable action should be brought that relief against the same might be afforded.

Again, the precise nature of the fraud found to exist in this case by the referee is included in and characterized by finding No. 24, as follows :

"Except the interest charged against herself in the second administration account, Mrs. Black never reported to the court or charged herself as administrator or guardian any amount received for interest, pasturage, sale of stock or otherwise in said business, although many thousands of dollars were so received, all of which, after paying taxes, for improvements and repairs, maintenance and education of the children, and other expenses, went into the acquired lands, loans, certificates of deposit, live stock, cash and other property in hand ; the amount of such interest, rents, and profits largely exceeds the fair and reasonable cost of maintaining said children so paid out of it. Mrs. Black never accounted, through the probate court or otherwise, to her said children, except as shown in her accounts as administrator and guardian. Since

the commencement of this action she has voluntarily and without consideration turned over to her son William certificates of deposit and sundry items received from the loans and sales of stock, amounting in the aggregate to about $20,000.''

It follows, as a necessary conclusion from the above findings, that the settlements and accounts in the probate court would at all times, if examined, have disclosed the exact matters and all matters included in such accounts. No concealment by the mother of the exact nature of the accounts rendered is shown or, from their very nature, can be shown. The means by which the fraud determined by the referee to exist was discovered, as by his findings shown, being the public records in the office of the probate court required by the law to be kept in the very transaction under investigation, and these records being open to the inspection of all alike, the question for determination in this case is whether plaintiff below, and those united with her in interest, can be heard to say that they made no discovery of the fraud until actual inspection and examination of these records were made in the spring of 1898; and, as a consequence thereof, that their right of action, which accrued as to all, at least, by November 22, 1890, at a time when none of them was laboring under any disability, shall not be deemed to have accrued until such examination was made, and this for the purpose of annulling settlements publicly made in open court some eight to twenty years after the contesting parties had signed the receipts above set out, by the terms of which they were informed that their father's estate and their interest therein had been fully ascertained, adjusted, settled, and distributed. We think not. While we do not find the precise question determined by this court

in any adjudicated case, the general, and as we think the correct, rule is that the language employed in the statute, "until discovery of the fraud," does not mean until the party complaining had actual knowledge of the fraud alleged to have been committed, but that constructive notice of the fraud is sufficient to set the statute in motion, even though there is no actual notice ; that where the means of discovery lie in public records required by law to be kept, involving the very transaction in hand, and the interests of the parties to the litigation, the public records themselves are sufficient notice of the fraud to set the statute in motion. Mr. Wood in his work on Limitations (3d ed.), section 276, page 661, says :

"It is an invariable rule that the fraud must have been one which was concealed from the plaintiff by the defendant, or which was of such a character as necessarily implied concealment. And the acts which are claimed to constitute the fraud are evidenced by public record or by judicial proceedings, and it cannot be claimed that there was such a concealment as would prevent the operation of the statute."

In 19 A. & E. Encycl. of L. 251, subject, "Limitation of Actions," it is said :

"Where the transaction is a matter of public record, either through conveyances registered as required by law or through other means, so that the party contending has abundant means of finding out the facts of the transaction and its nature, there can be no concealment, and he will be charged with notice of the transaction and of facts which a diligent investigation thereof would develop. A party must be presumed to know what, by the exercise of reasonable diligence, he might have discovered ; and when the fundamental facts upon which the alleged fraud rests are matters of public record, open to inspection, he will not be permitted to plead ignorance of the fraud in order to evade the operation of the statute."

Mr. Justice Miller, in *Norris v. Haggin*, 136 U. S. 386, 10 Sup. Ct. 942, 34 L. Ed. 424, held :

"It is a part of this general doctrine that to avoid the lapse of time or statute of limitation the fraud must have been one which was concealed from the plaintiff by the defendant, or which was of such a character as necessarily implied concealment. Neither of these principles can apply to the defendants in this case. The acts which constituted the fraud as alleged in the bill were open and public acts. The note and the mortgage were recorded in the proper public office of the proper county. The possession of the defendants was obtained by judicial proceedings which were open to everybody's examination, and which were probably well known in the entire community. The very circumstance that in 1869 the plaintiff consulted a lawyer upon this subject, shows that he was aware of the fact that defendants were contesting his right to the property, and that, if he had made any inquiry at all, he must have known of the proceedings on which they rested their title."

In *Laird v. Kilbourne et al.*, 70 Iowa, 83, 30 N. W. 9, it was held :

"An action to set aside a fraudulent conveyance of real estate is barred in five years after the fraud is discovered, and it is conclusively presumed to be discovered when the fraudulent conveyance is filed for record."

In the opinion, Mr. Justice Beck said :

"In such cases, the causes of action do not accrue 'until the fraud shall have been discovered by the party aggrieved.' (Section 2530.) The fraud will be discovered when the fraudulent act is revealed—made known to the party aggrieved. Notice or knowledge of the act is a discovery of the fraud. The act which is the very foundation of the fraud alleged in this case—indeed, which itself constitutes the fraud complained of—was the deed of Kilbourne to his wife. Plaintiff is chargeable with notice of this act by the

45—64 KAN.

record of the deed. (*Gebhard v. Sattler*, 40 Iowa, 152; *Bishop v. Knowles*, 53 id. 268, 5 N. W. 139.)   See, also, *Gardner v. Cole*, 21 id. 152.

"The law presumes that plaintiff had notice of the deed to the wife from the day it was filed for record. This deed is the very foundation—the heart—of the fraud alleged as the cause of plaintiff's action.   The law, therefore, holds that plaintiff discovered the fraud when she had notice of the deed."

In *Francis v. Wallace*, 77 Iowa, 373, 42 N. W. 323, it was held:

"Fraud in the conveyance of a minor's land by his guardian, under order of court, is presumed to be discovered when the deed is filed for record; and the ward cannot maintain an action to set it aside seven years after reaching his majority, and after it would otherwise be barred by the statute of limitations, on the ground that he did not sooner discover the fraud."

To like effect are *Hecht v. Slaney*, 72 Cal. 363, 14 Pac. 88; *Smith v. Talbott*, 18 Tex. 774; *Nudd v. Hamblin*, 8 Allen (Mass.) 130; *Manning v. San Jacinto Tin Co.*, 9 Fed. 726.

In the case at bar, the foundation, the very essence of the cause of action relied upon by the contesting parties was the constructive fraud of the widow in assuming to take the personal estate, of which she was one of the administrators, at its appraised value.   Her subsequent conduct in treating it as her property and in failing to account for more than the appraised value, was at all times readily apparent from an inspection of her accounts filed in the probate court, and, from an actual inspection and examination of such records by the contesting parties in the spring of 1898, is the discovery of the fraud found by the referee, which, it is claimed, exempts the action from the operation of the statute.   Upon both principle and authority, in our

judgment, it must be held that the means of discovering the fraud, and the discovery actually made, at all times after the cause of action accrued having existed in these public records, involving the identical transaction, the findings made by the referee are insufficient to remove the case from the operation of the statute, and that the plea of the statute must be upheld.

It follows that the decree of partition of the real estate belonging to James G. Black at the date of his decease must be carried into effect as decreed ; that the decree, in so far as it orders the setting aside of the administration and guardian proceedings for fraud and the accounting based thereon, and the decree of partition of the acquired lands, must be reversed, with the direction that the cause of action therefor be dismissed.    It is so ordered.

DOSTER, C.J., JOHNSTON, ELLIS, JJ., concurring.