No. 33,607

MAY CAIN KULL et al., *Appellees,* v. F. M. PEARL, as Executor of the Estate of Emily V. Campbell, Deceased, et al., *Appellees;* ETTA IDOL, *Appellant.*

(76 P. 2d 790)

Opinion filed March 5, 1938.

*John L. Hunt, Margaret McGurnaghan, John H. Hunt* and *George M. Brewster,* all of Topeka, for the appellant.

*Robert Stone, James A. McClure, Robert L. Webb, Beryl R. Johnson* and *Ralph W. Oman,* all of Topeka, for the appellees.

The opinion of the court was delivered by

THIELE, J.: This was an action brought to determine title to a

particular tract of land hereafter described, but referred to frequently as the Penny farm, and to settle matters pertinent thereto. The plaintiffs prevailed, and the defendant Etta Idol appeals.

Because of the detailed statements in the findings of fact, only a brief summary will be made of the pleadings. The petition alleged that under the will of Emily V. Campbell her residuary estate went to F. M. Pearl, as trustee, to be by him sold and converted into money and the proceeds divided among certain named persons, who, or their successors in title, were the plaintiffs and the defendants Harvey T. Bradley and Fred Idol; and that they are beneficial owners of the residue, which included the southeast quarter of section 8 and the southwest quarter of section 9, township 2, range 19, in Doniphan county, Kansas. It was then alleged:

"Plaintiffs further allege that in 1899 said Emily V. Campbell purchased the above-described real estate; that at the time of such purchase she was married to John W. Campbell, who at that time and subsequently assisted her in the management of her business; that on September 22, 1899, the said John W. Campbell assisted in the negotiations leading up to the purchase of the real estate heretofore described and a deed was taken to said property in the name of John W. Campbell, notwithstanding the fact that the entire consideration of $17,000 paid for said real estate was furnished and paid by said Emily V. Campbell, and the title to said property was taken in the name of John W. Campbell upon the agreement between John W. Campbell and Emily V. Campbell, and without any fraudulent intent, that John W. Campbell was to hold said land and the title thereto in trust for his wife, the said Emily V. Campbell, and such title was so taken and held by John W. Campbell in trust for said Emily V. Campbell."

The petition further alleged that after acquisition of the land it was managed by Emily V. Campbell and was regarded by her and her husband as being her property, etc., and that she collected and retained the rents, paid the taxes, made and paid for the improvements, etc., and that her possession was open, visible and known to the community and to her husband, etc. We need not here detail allegations with reference to the will of her husband nor what was done in the administration of his estate. The prayer was for determination of ownership of the real estate described and for decree that the plaintiffs and defendants Harvey T. Bradley and Fred Idol were owners, etc.

The answer of Etta Idol admitted she was in possession of the real estate in question; that the will of Emily V. Campbell had been admitted to probate, but denied that it devised the land. She set up her version of the acquisition of the land and her claim that it was

the property of John W. Campbell and passed to her under his will. Numerous other allegations need not now be noticed. Her prayer was that plaintiffs and defendants other than herself be denied relief and be barred from any interest in the real estate, and that she have such relief as the court deemed just and equitable.

We need not detail the answer of F. M. Pearl in his various representative capacities. It may be noted here that neither the will of Emily V. Campbell nor of her husband, John W. Campbell, specifically described the Penny farm.

At the trial much evidence was taken, the evidence as abstracted constituting about 120 pages. The trial court made findings of fact and conclusions of law which are quoted or summarized as follows:

"(1) [Here immaterial.]

"(2) At the time of the marriage of Emily V. Campbell to John W. Campbell in 1893, Emily V. Campbell was a widow of considerable financial means, having inherited from her first husband, H. W. Newling, three different tracts of cultivated land in Brown county, Kansas, consisting in the aggregate of approximately 257 acres of land, and about $20,000 in personal property, consisting mostly of notes and mortgages. On the other hand, John W. Campbell was a man of little or practically no financial means, was a clerk in a small mercantile store in White Cloud, Kan., and the only property which the evidence shows that he owned was a 40-acre tract of rough, uncultivated land on the Missouri river, worth approximately $10 or $15 per acre.

"(3) In September, 1899, Emily V. Campbell purchased from John D. Penny and wife, and W. H. Forbes and wife, a farm consisting of 320 acres, described as . . . [the Penny farm], in Doniphan county, Kansas.

"The deed given therefor was dated September 22, 1899, and was filed of record on March 1, 1900, named John W. Campbell as grantee therein, and stated a consideration of $17,000.

"(4) At the time of or shortly prior to the purchase of said land Emily V. Campbell had at her disposal and available for the payment of such purchase price the approximate sum of $11,500 in cash, without reference to other property, real and personal, which she owned, while John W. Campbell had no money, funds or income from which the purchase price or any considerable portion thereof could have been paid. The evidence affirmatively shows that $8,000 of the purchase price of the Penny farm was paid by Emily V. Campbell from the proceeds of a loan secured by a mortgage executed by Emily V. Campbell and John W. Campbell upon the land in question, which mortgage ran to Julia P. Warren; and that the Warren mortgage was later paid by the proceeds of a mortgage executed by Emily V. Campbell and John W. Campbell to the Mutual Benefit Life Insurance Company. This last mortgage was paid by Emily V. Campbell by the application of another mortgage in the amount of $8,500 which she owned, which said mortgage was upon the land not herein involved but which had formerly belonged to her.

"This chain of circumstances shows positively that Emily V. Campbell paid in this manner $8,000 of the original purchase price of said land.

"From the above facts and from other evidence introduced, the court finds that the full consideration paid for the Penny farm, the land in question, was paid by Emily V. Campbell.

"(5) From the time of the purchase of the Penny farm Emily V. Campbell exercised complete domination and control over its management, rented it to tenants, received the proceeds from the crops raised upon the farm, built an eight-room house, a barn, granary, and other improvements thereon, and paid for the same from her own funds; that with the exception of one year, 1901, the farm was assessed for taxation in her name, with the acquiescence and at the direction of both Emily V. Campbell and John W. Campbell; that she paid the taxes on said property from the time of its acquisition in 1900 up to the time of her death in 1932.

"(6) On various occasions John W. Campbell referred to the farm as 'her farm,' or as 'his wife's farm,' and frequently stated that the 'farm belonged to her.' On one occasion when asked concerning the location of a ditch upon the farm, John W. Campbell stated to workmen building such ditch that he would have to ask his wife, as 'she owned the place'; on another occasion, when speaking of whether the land should be put to grass or wheat he stated to other workmen that 'he would leave it to his wife, as she had the say.' On still another occasion, in determining the location of a granary upon the farm, John W. Campbell stated in the presence of two witnesses: 'Well, all right, the place is yours [meaning his wife] and you are paying for it. Put it where you want to.'

"Other statements of a similar nature were made at different times by John W. Campbell, and numerous other statements were made by him recognizing her as the owner of said farm.

"(7) Emily V. Campbell made numerous statements to different witnesses in and out of the presence of John W. Campbell that she had bought the farm, that the farm was hers and that she would like to sell it, and that she owned it. Shortly after the farm was purchased and while in the possession of tenants, she stated to one witness: 'I had some money and I knew of no better way to invest it than to buy land and I bought the Penny farm.' Many other statements of such import were made by Emily V. Campbell.

"(8) The evidence shows that no claim was ever made at any time during his lifetime by John W. Campbell that he owned the farm or had any control over it or the management or operation of it; that while he assisted his wife at times in managing or looking after the farm, still she dominated its supervision and made the decisions as to its operation and dictated what should be done in regard to its management. She paid taxes upon the farm for approximately thirty-two years and until the time of her death.

"(9) Prior to the purchase of the farm and for many years thereafter, John W. Campbell did not have a bank account, while his wife, Emily V. Campbell, had a bank account, and what checks were drawn by John W. Campbell were drawn upon his wife's account, and such checks were signed 'Emily V. Campbell, by John W. Campbell.' The proceeds of the farm were deposited in her bank account.

"(10) It appears from the evidence respecting the financial standing and condition of the parties and the payment of the purchase price by Emily V.

Campbell and the taking of the title to the land in the name of John W. Campbell, from the confidential and fiduciary relation existing between them, from the conduct of both John W. Campbell and Emily V. Campbell respecting the building and payment for improvements, the assessment of the property for taxation in her name and the payment of taxes by her, the admissions made by John W. Campbell as to the ownership of the farm by his wife, the statements made by Emily V. Campbell respecting her ownership, from the manner in which they both regarded the farm, its ownership, management, and operation, that a trust relation existed between them in respect to said farm, and from the foregoing circumstances and other evidence not herein detailed, there was an agreement between Emily V. Campbell and John W. Campbell that John W. Campbell was to hold title to said farm in trust for his wife, Emily V. Campbell, and the court finds that John W. Campbell did in fact hold said farm in trust for Emily V. Campbell.

"(11) That the agreement so implied from the relationship of the parties and the circumstances enumerated above that John W. Campbell would hold the title to said land in trust for his wife was without fraudulent intent on the part of either of them."

(12) [On January 15, 1915, wills prepared by F. M. Pearl for John W. Campbell and Emily V. Campbell were drawn and executed and left with Pearl.]

(13) Emily V. Campbell's will was revoked by a will made in 1930 under which plaintiffs claim and,—

"Neither the will of John W. Campbell nor Emily V. Campbell executed in 1915 specifically described any real estate as passing thereunder. At the time of the execution of his will, John W. Campbell owned the 40-acre tract of land referred to in finding No. 2 and a city lot in White Cloud, Kan., appraised at $50. Emily V. Campbell, however, owned considerable real estate consisting of both city and farm property.

"(14) John W. Campbell died October 14, 1917, a resident of Doniphan county, Kansas.

"(15) On July 7, 1930, F. M. Pearl caused the will of John W. Campbell, which had been in his possession and locked in his office safe since the death of John W. Campbell thirteen years before, to be filed for probate. On July 18, 1930, F. M. Pearl was appointed by the court as executor of the estate of John W. Campbell, and on the same date the court appointed appraisers to appraise his estate and to return an inventory thereof. However, no such appraisement was made or inventory filed in said estate until two years later, reference to which is hereinafter made.

"(16) [Immaterial here.]

"(17) Emily V. Campbell died on April 3, 1932, and seventeen days after her death, and on April 20, 1932, F. M. Pearl, as executor thereof, filed an inventory and appraisement in the estate of John W. Campbell, wherein he listed the Penny farm as belonging to John W. Campbell, and constituting a part of his estate. This was the first claim of ownership to the Penny farm made on the part of John W. Campbell or his estate by either the defendant Pearl or the defendant Etta Idol.

"On the same day that he filed the inventory in the John W. Campbell

estate, F. M. Pearl, as executor thereof, filed an inventory in the estate of Emily V. Campbell in which he omitted listing the Penny farm as part of that estate.

"(18) The defendant Etta Idol went into the possession of the Penny farm shortly after the death of Emily V. Campbell and is now in possession thereof with the permission of F. M. Pearl as trustee thereof under the will of Emily V. Campbell, deceased.

"(19) The plaintiffs, with the exception of Leona Waggoner and Warren Snook, and the defendants Harvey T. Bradley and Fred Idol, as well as the defendant Etta Idol, are nieces and nephews of Emily V. Campbell, deceased. The plaintiffs claim title to the land in question as devisees under the will of Emily V. Campbell, deceased, while the defendant Etta Idol claims title to the land in question as devisee under the will of John W. Campbell. F. M. Pearl is related to the defendant Etta Idol and is a cousin by marriage.

"(20) F. M. Pearl is now acting as the executor of the estate of John W. Campbell, deceased, and of Emily V. Campbell, deceased, and is also acting as trustee under the will of Emily V. Campbell, deceased, as to all real estate owned by her at the time of her death. Under the will of Emily V. Campbell, F. M. Pearl is charged with certain duties therein expressed concerning such real estate.

"(21) The estate of John W. Campbell, deceased, is indebted to the estate of Emily V. Campbell, deceased, in the amount of several hundred dollars, representing amounts paid by Emily V. Campbell for the benefit of the estate of John W. Campbell; and F. M. Pearl, as executor of the estate of John W. Campbell, deceased, is indebted to himself as the executor of the estate of Emily V. Campbell, deceased. Moreover, he is a creditor of both estates in the amount of $500, representing unpaid attorney's fees and executor's fees in each estate.

"(22) No action has been taken by F. M. Pearl as trustee under the last will and testament of Emily V. Campbell, deceased.

"(23) On February 15, 1935, the defendant Etta Idol, upon the direction of F. M. Pearl, paid or caused to be paid to the county treasurer of Doniphan county, Kansas, the sum of $1,596.95, purporting to be the inheritance tax chargeable against the estate of John W. Campbell, deceased, which check was computed upon erroneous information given to the probate court of Doniphan county, Kansas, and subsequently given to the inheritance tax commission of the state of Kansas, that John W. Campbell died October 14, 1920, while the correct date of his death was October 14, 1917."

## "Conclusions of Law

"(1) From all the evidence in the case it appears to the court, and the court concludes as a matter of law, that by agreement and without any fraudulent intent, John W. Campbell was to hold, and did hold, the Penny farm, the land involved in this action, in trust for his wife, Emily V. Campbell, who paid the purchase price thereof.

"(2) The plaintiffs and the defendants Harvey T. Bradley and Fred Idol are entitled to be decreed to be the owners of the real estate involved in this action, subject to the provisions of the will of Emily V. Campbell, deceased, free from the claims of the other defendants in this case, and that the de-

fendant Etta Idol is not entitled to the possession thereof and should be ejected therefrom.

"(3) Because of the confusion among the three estates herein described, and the existing conflict of interest, it is impossible for the defendant, F. M. Pearl, to account to himself and to make settlement with himself between one trust and the others, by reason of which, together with the other circumstances shown in the case, he is not a proper person to act as executor of the estate of Emily V. Campbell, deceased, or as the trustee of her estate, and should be removed as such executor and trustee of her estate to the end that the same may be administered impartially and without confusion of conflicting interests.

"(4) That the defendant Etta Idol took no interest in the real estate involved herein under the will of John W. Campbell, deceased, and that she has no interest in said real property under the will of Emily V. Campbell, deceased, and that upon the death of John W. Campbell, the legal and equitable title to said real estate was vested in Emily V. Campbell, and upon her death the same passed to the plaintiffs and the defendants, Harvey T. Bradley and Fred Idol, subject to the provisions of the will of Emily V. Campbell.

"(5) That upon consideration of all the evidence in the case, the plaintiffs are not guilty of laches as claimed by the defendants, and that the cause of action stated in the petition is not barred by the statute of limitations.

"(6) That this court should retain jurisdiction of this case to administer the trust estate for the purpose of an accounting between the defendant Etta Idol and the plaintiffs and the defendants Harvey T. Bradley and Fred Idol, for the reasonable and proper rental value of said real estate during the period of her possession, and for such other proper relief incident to a complete determination of this case.

"(7) The estate of John W. Campbell, deceased, was not subject to the payment of an inheritance tax because of the enactment of chapter 290 of the Session Laws of 1929 (section 79-1501c, G. S. 1935), and therefore the amount of $1,596.95 paid or caused to be paid by the defendant Etta Idol, at the instance and direction of the defendant F. M. Pearl, was a payment not required by law."

Judgment consistent with the findings of fact and conclusions of law was rendered. F. M. Pearl, as trustee, was removed and a successor in trust was appointed. Etta Idol appeals.

There is no dispute but that under the allegations of the petition the claim is that with reference to the land in question the conveyance was made to John W. Campbell, the consideration was paid by Emily V. Campbell, and that a trust resulted in her favor. Whether such claim is good or not is controlled by two sections of our statute. Under G. S. 1935, 67-406, it is provided that:

"When a conveyance for a valuable consideration is made to one person and the consideration therefor paid by another, no use or trust shall result in favor of the latter; but the title shall vest in the former, subject to the provisions of the next two sections."

The first of the two sections therein referred to is not applicable here, but the second, G. S. 1935, 67-408, reads:

"The provisions of the section next before the last shall not extend to cases where the alienee shall have taken an absolute conveyance in his own name without the consent of the person with whose money the consideration was paid; or where such alienee in violation of some trust shall have purchased the land with moneys not his own; or where it shall be made to appear that by agreement and without any fraudulent intent the party to whom the conveyance was made, or in whom the title shall vest, was to hold the land or some interest therein in trust for the party paying the purchase money or some part thereof."

Consistent with the allegations of the petition and with the above statutes, appellant argues that plaintiffs must show that the entire purchase price was paid by Emily V. Campbell, and she further contends it must all have been paid at or before the time the land was purchased, or if not all paid, that an agreement as to an aliquot part should have then been made; that plaintiffs must further show that by agreement and without any fraudulent intent John W. Campbell was to hold the title to the land in trust for Emily V. Campbell, the agreement to be made at the time of the conveyance, and that plaintiffs must affirmatively show absence of fraudulent intent. In connection with her argument, appellant deals not only with legal tests for determining the elements of consideration and its payment, the agreement and the absence of fraudulent intent, but with the sufficiency of the proof, and contends that the proof was insufficient. Appellant's brief and the brief of the appellees are exhaustive, and many citations of authority are made. Lack of space precludes reference to all such citations.

With respect to all three elements involved, appellant calls our attention to decisions from other jurisdictions, and to other authorities, holding that the proof should be clear, strong and convincing, and such as not to leave reasonable doubt, and that parol evidence to establish a resulting trust should be received with caution. (65 C. J. 449; 23 A. L. R. 1502; 2 Bogert on Trusts & Trustees, p. 1424.) In cases arising under the same statutes with reference to trusts, this court has never applied so strict a rule. In *Lyons v. Berlau,* 67 Kan. 426, 73 Pac. 52, it was said:

"There was no express agreement shown on the part of Mrs. Lyons that she held the park property in trust for Korman. *This was proved by circumstances. While the proof was not strong, we think it was sufficient to justify the jury in so finding."* (Italics ours.) (p. 433.)

There the claimed beneficiary was in possession until his death. In *Taylor v. Walker*, 114 Kan. 614, 616, 220 Pac. 518, appears the following:

"It will be observed the statute does not require the agreement to hold title in trust for the person paying the consideration to be in writing, and the court has held many times that a parol agreement is sufficient. The exception to the provisions of section 11679 [now G. S. 1935, 67-406] is one of several in which a trust may be established by parol evidence, *and it is sufficient that the court or jury trying the case be satisfied of the existence of the trust relation.*" (Italics ours.) (p. 616.)

In that case the claimed beneficiary was in possession. Even though it be assumed that the proof should meet the standard contended for by the appellant, it would be presumed, in the absence of evidence to the contrary, and there is none here, that the trial court applied the proper test in weighing the evidence submitted and in finding the facts. (See *Leverton v. Rork*, 74 Kan. 832, 85 Pac. 800; *Woodell v. Albrecht*, 80 Kan. 736, 104 Pac. 559; *Hoover v. Hopkins*, 122 Kan. 65, 251 Pac. 411.) In commenting on the last cited case, this court, in *Shoemake v. Davis*, 146 Kan. 909, 73 P. 2d 1043, said:

"Appellant cites cases like *Hoover v. Hopkins*, 122 Kan. 65, 251 Pac. 411, which hold that the proof of a claimant's interest in land based upon an oral contract, where enforceable at all, where his adversary holds the title, must be clear and convincing. Quite so. But must the proof be clear and convincing to the appellate court? Not necessarily. *It must be clear and convincing to the tribunal authorized to ascertain the controverted issues of fact.*" (Italics ours.) (p. 915.)

We shall consider appellant's specific complaints in view of the above.

It is first contended there is no evidence that Emily V. Campbell paid the purchase price for the Penny farm, and especially that she paid all of the purchase price at or before the conveyance, and our attention is directed to the last two paragraphs of finding 4. That entire finding must be read in connection with findings 2 and 9, especially, and all other findings bearing on the question of payment. Whether the facts found are legally sufficient or not, the record clearly shows that when the farm was purchased Emily V. Campbell was in funds to pay $9,000 of the stated consideration of $17,000, and that her husband had little or no personal property and that such real estate as he possessed was not used either as part of the consideration or as a basis for raising it. Appellant states she can find no decision that payment of the consideration can be in-

ferred, and she argues it must be expressly proved by plaintiffs that Emily V. Campbell paid the consideration, and that her husband did not. In support, she directs our attention to the syllabus, and especially to the last paragraph of the opinion in *Kaul v. Hoenshell*, 129 Kan. 278, 282 Pac. 697, wherein it is said:

"Because the plaintiff had not paid any part of the purchase money at the time the land was purchased, the statute last quoted [G. S. 1935, 67-408] does not control, and for that reason no trust arose in favor of the plaintiff." (p. 279.)

That sentence cannot be separated from the other parts of the opinion and considered alone. Reference to the opinion will show that in that case plaintiff had paid no part of the consideration, but that after the deed there involved had been executed and delivered to defendant, who paid the full consideration, plaintiff had tendered a check for one half of the consideration and claimed a one-half interest in the land. Whether under that state of facts a trust arose in plaintiff's favor was the question for decision, and the syllabus and the quoted language must be read and considered with that in mind.

The matter does not rest entirely on inferences from the evidence, however persuasive they may be. Nell Stearns, a distant relative of Mrs. Campbell and of the appellant, but who was not a beneficiary under the will, testified to a conversation had between Mrs. Campbell and the witness and her mother. She was not able to fix the date. In effect it was that her mother said to Mrs. Campbell:

"Emily, I heard you bought some land," and that Mrs. Campbell said, "Yes, I did, Matt, I had some money and I know of no better way to invest it than to buy land, and I bought the Penny farm."

In view of the above statement and other testimony of the witness, it is clear that although the witness could not fix a date, the conversation took place not long after the Penny farm was acquired.

In support of her contention the purchase price must have been entirely paid by Emily V. Campbell at or before the land was acquired, appellant relies on *Anderson v. Anderson*, 138 Kan. 77, 23 P. 2d 474. That opinion was one denying a rehearing, the original opinion appearing in 137 Kan. 833, 22 P. 2d 471. Space does not permit a full statement of the facts leading up to a claim that interests in land varied, dependent on the amount of the original purchase price that might thereafter be paid by each of two grantees. In the last opinion, after making reference to the trusts statutes, it was said:

"Such an agreement must be made when title is taken, and if it does not relate to the entire tract, must relate to some definite share of the land. In this instance there was nothing remotely resembling an agreement between James and Richard that Richard was to hold an aliquot part of half of the land on any terms for anybody." (p. 78.)

But that must be read in connection with the whole matter. The facts in that case and in the case at bar are materially different, and that case does not support the contention the purchase price must be fully paid at the time the deed was made by the person asserting a resulting trust in his favor.

Although it is contended that the court's finding No. 4, tracing payment of the $8,000 mortgage given when the Penny farm was purchased, is not sustained by the evidence, our examination of the record shows that it is sustained. Of course, when that mortgage was first given, John W. Campbell signed it and the note it secured. Later, another $8,000 mortgage was executed and the proceeds used to pay the first. There is no dispute this last mortgage was paid by Emily V. Campbell. It seems that the second mortgage was paid by using a mortgage owned by Emily V. Campbell and which she acquired some time previously when she sold some land belonging to her which at some previous time stood in her husband's name. This fact and the fact that the release of the first mortgage stated receipt of moneys from John W. Campbell did not compel the court to disregard the otherwise undisputed evidence.

Assuming, as we do, that the findings with respect thereto are supported by substantial competent evidence, we are of the opinion that Emily V. Campbell, having paid originally of the total consideration of $17,000, the sum of $9,000, and having obligated herself to pay the remainder of $8,000, and having subsequently paid it, in legal effect paid the consideration mentioned and referred to in G. S. 1935, 67-406.

Appellant concedes that an agreement to hold land in trust under the above-mentioned statutes may be inferred from the circumstances, but she insists that it must be shown that the agreement was made at the same time as the conveyance. This contention seems to be based solely on *Clester v. Clester,* 90 Kan. 638, 640, 135 Pac. 996. John Clester had lived in Ohio, where he was married and had children. His wife died. He came to Kansas and invested in a farm some money his wife had inherited. This land was sold and the proceeds invested in the lands in controversy. He married a second time, and not long thereafter conveyed a part of the land

to his second wife. Later, by transfer through a third person, she had title to the remainder. There was evidence she possessed no means of her own; that she had made admissions she held the title in trust; that she knew that money of the first wife was used to purchase the farm and that she intended to pay the children of the first wife for their share. After the death of the father, the children of the first wife sought to recover the land on the theory a trust was created. A demurrer to the evidence was sustained. Appellant directs our attention to the following quotation:

"The weakness in appellants' claim is the absence of any testimony to show an agreement at the time the conveyances were made by which Ida M. Clester was to hold the land in trust for the husband. Had there been testimony that such was the agreement, the case might be said to fall within the provisions of section 8 of the act relating to trusts and powers (Gen. Stat. 1909, §9701), and even though the agreement had been oral it would lie within the province of equity to raise a trust to prevent a failure of justice (*Rayl v. Rayl*, 58 Kan. 585, 589, 50 Pac. 501, and cases cited in the opinion). *But there was no testimony showing any promise or agreement or understanding at the time the conveyances were made that she should hold in trust for him."* (p. 640.) (Italics ours.)

But the case was summed up later, as follows:

"The appellants' argument in effect is, that it is unreasonable to assume that John Clester intended to convey to the second wife all the land he owned and to exclude them from any interest therein; and that from the mere unreasonableness of such an intention it is a fair inference that an agreement was made at the time by which Ida M. Clester was to hold the title in trust for him. The argument loses sight of the fact that, being the owner of the land, he could lawfully make a gift of it to the wife regardless of how unreasonable such a procedure might be or appear to be. The conveyance to her without a valuable consideration being presumed to have been intended as a gift, the burden rests upon appellants to establish the contrary.

"If all that is required to defeat an absolute conveyance of real estate by the husband to the wife is a showing that it results in hardship and unfairness to other members of the family, then it follows that no matter what the intention may have been, the conveyance must stand or fall upon the question of how it may appear to affect the interests of persons other than the grantor and the grantee. The husband may have intended to make a gift to the wife, but his purpose fails if a jury will say that the making of a gift to her under the circumstances was unreasonable because it results in hardship to others. That such is not the law is too apparent to require argument or the citation of authorities." (p. 643.)

We believe appellant puts too much stress on the italicized language. We have heretofore referred to and quoted from *Lyons v. Berlau,* 67 Kan. 426, 433, 73 Pac. 52, to the effect that the agree-

ment may be proved by circumstances, and *Taylor v. Walker*, 114 Kan.. 614, 220 Pac. 518, to the same effect. In the last case it was also said:

"The agreement and its terms may be inferred from the relations of the parties, their financial means, their conduct and admissions, and other pertinent circumstantial evidence." (p. 617.)

Appellant directs attention to the fact that the various witnesses testified to statements by John W. Campbell and Emily V. Campbell made at periods of from two to perhaps ten years after the Penny farm was acquired, and to apparent weaknesses therein, and insists the testimony fails to prove that any agreement was made when the land was acquired that John was to hold it for Emily. The length of time elapsing between the acquisition of the land and the date the statements were made may affect the weight to be given the testimony, but it does not affect its competency. No good purpose is served by reviewing the detailed testimony which supports the findings of fact. But when consideration is given to the financial situation of John and Emily at the time of their marriage and at the time the land was acquired, to the repeated claims of Emily to be the owner of the land and to the repeated recognitions of her ownership by John, even though the statements were made after the land was acquired, and in addition that during all that time Emily directed the improvements made on the farm, paid for them, collected the rents and paid the taxes, it would seem she did so only because it was understood between her and her husband that he held the title not for himself but for her.

Appellant also contends the appellees failed to show lack of fraudulent intent. We think the circumstances showed that—in addition, not even the appellant claims there was any fraud.

We recognize that there was testimony which, if fully believed by the trial court, would have warranted a different judgment than was rendered. But, as has been repeatedly held, it is not the function of an appellate court to substitute its judgment for that of the trial court on matters of fact. In this connection, we have deliberately refrained from discussing the testimony relative to the making of wills by John W. Campbell and Emily V. Campbell in 1915, and especially as to what was said at that time. Without saying more, there was evidence of an impeaching character, and which need not here be detailed, which warranted the court in not giving it much credence.

It is not necessary that we discuss separately the claimed error of the court in overruling defendants' demurrer to plaintiffs' evidence. For reasons hereinbefore mentioned, the ruling was correct. The judgment is affirmed.