No. 37,903

CHRISTINE KOTZMAN, *Appellee*, v. LOUIS PAPISH and JENNIE PAPISH, *Appellants*.

(219 P. 2d 425)

Opinion filed June 10, 1950.

*R. L. Letton*, of Pittsburg, argued the cause, and *P. E. Nulton*, of Pittsburg, was on the briefs for the appellants.

*V. W. Cooprider*, of Pittsburg, argued the cause, and *Pete J. Farabi* and *C. S. Denison*, both of Pittsburg, were on the briefs for the appellee.

The opinion of the court was delivered by

HARVEY, C. J.: Plaintiff brought this action May 12, 1948, for a decree that she is the owner of an undivided one-half interest in a

described residence property in the city of Frontenac and for partition of the property. The trial court heard the evidence, found all issues in favor of the plaintiff, and rendered judgment accordingly. Defendants have appealed and rely upon our statute of limitations (G. S. 1935, 60-306, ¶¶ 2 and 3) and upon G. S. 1935, 67-401 of our statute of trusts.

The facts shown by the record, which are not controverted, may be summarized as follows: In 1939 plaintiff was a registered nurse employed in a hospital. She became acquainted with the appellant, Louis Papish, and began keeping company with him. Sometime in 1940 he went to the hospital at Norton (maintained by the state for tubercular patients). She got employment in that hospital and went there to nurse him and other patients until sometime in 1942, when he was discharged. They continued to keep company and early in 1943 they became engaged to be married and began to think about a home. Lots were purchased, a building was started and completed in 1946. In December, 1946, when the residence was about completed, the parties disagreed and their engagement was broken in the spring of 1947.

The testimony after their agreement about purchasing the property and building a home was in conflict. Plaintiff testified, and other witnesses supported material portions of her testimony, that when they talked about acquiring lots and building a home she was employed and earning $250 per month; that he was employed and earning from $100 to $125 per month; that they agreed to buy the lots and take the title in the names of both of them and that they would each contribute to the cost of the residence; that she gave him $50 for the down payment on the lots; that as the work progressed she gave him money to pay the laborers, sometimes $50 and at other more frequent times $100, and that she also paid material bills aggregating about $1,000; that altogether she paid as much as $2,000 toward the construction of the house; also that she bought Venetian blinds for the windows, which cost $89. He denied that they agreed to take title to the lots in the names of both and that she paid him anything on the purchase of the lots or for the construction of the building. Respecting this parol testimony and the credibility of the witnesses, these were matters to be passed upon by the trial court, and its conclusion thereon, favorable to plaintiff, cannot be disturbed here. When the lots were purchased a deed, executed March 11, 1943, and recorded April 17, 1943, was taken in the name of Louis Papish and his mother, Jennie Papish, as the sole grantees. Plaintiff

testified that she never saw that deed nor had actual knowledge of the fact that her name was not included as a grantee until in August, 1946. This was not denied by Louis Papish. She testified not only that the agreement was that the deed was to be taken in the names of both of them, but that he had told her it had been taken that way and that they owned the property together. His testimony was to the contrary. She further testified that when she learned the deed did not have her name as a grantee she asked him about it and he told her that he had "legal advice" that the deed could not be in her name until after their marriage, and that notwithstanding the form of the deed her interest in the property was protected. She talked with him and his mother when they were all together and both of them told her that her interest in the property would be protected.

On March 24, 1948, Louis Papish executed a quitclaim deed to his mother, Jennie Papish, of "All of my undivided interest to" the lots in question. The consideration named in the deed was "Love and affection." This deed was duly recorded on the same day it was executed. Soon thereafter this action was brought.

In the judgment of the court, rendered July 21, 1949, the court found that the plaintiff and the defendant Jennie Papish each was the owner in fee simple of an undivided one-half interest in the property and made an order for its partition between them, appointed appraisers, and provided for further procedure in harmony with our partition statutes (G. S. 1935, 60-2101 *et seq.*).

Counsel for appellants in their brief do not rely upon paragraph *Second* of G. S. 1935, 60-306, hence we regard any claim based upon that paragraph in the petition as having been abandoned. They do rely heavily upon a portion of the third paragraph of the section. We quote the pertinent portions of the section relied upon:

"Civil actions, other than for the recovery of real property, can only be brought within the following periods, after the cause of action shall have accrued, and not afterwards: . . .

"*Third.* Within two years: . . . an action for relief on the ground of fraud—the cause of action in such case shall not be deemed to have accrued until the discovery of the fraud."

The point argued here is when plaintiff discovered the fraud of omitting her name as one of the grantees in the deed executed March 11, 1943, and duly recorded on April 17, 1943. Counsel rely heavily upon the rule laid down in *Black v. Black*, 64 Kan. 689, 68 Pac. 662, where it was held:

"The phrase, 'until discovery of the fraud,' in subdivision 3 of section 18 of the code (Gen. Stat. 1901, § 4446; now G. S. 1935, 60-306, paragraph *Third*), which provides the limitation of two years in case of 'action for relief on the ground of fraud,' . . . does not necessarily mean until the party complaining had *actual notice* of the fraud alleged to have been committed, for constructive notice of the fraud is sufficient to set the statute in motion even though there may be no actual notice. Where the means of discovery lie in public records required by law to be kept, which involve the very transaction in hand, and the interests of the parties to the litigation, the public records themselves are sufficient constructive notice of the fraud to set the statute in motion." ·

They cite a number of other cases in which the rule announced in *Black v. Black,* supra, has been followed: *Hamill v. Hamill,* 134 Kan. 715, 8 P. 2d 311; *Smith v. Rector,* 135 Kan. 326, 10 P. 2d 1077; *Kittel v. Smith,* 136 Kan. 522, 16 P. 2d 538; *Malone v. Young,* 148 Kan. 250, 81 P. 2d 23; *Herthel v. Barth,* 148 Kan. 308, 81 P. 2d 19; *Axe v. Wilson,* 150 Kan. 794, 96 P. 2d 880; *Simmons v. Clark,* 151 Kan. 431, 99 P. 2d 739, and cases cited therin.

The rule stated in *Black v. Black,* supra, while correctly stated as applied to that case, has not been held all-inclusive either before or since the case was decided. In *Duffitt v. Tuhan,* 28 Kan. 292, where a tenant in actual possession of real estate fraudulently acquired title by taking a tax deed in his own name, the recording of the deed was held not to be constructive notice of the fraud. In *Perry v. Wade,* 31 Kan. 428, 2 Pac. 787, it was held that the recording of the deed was not constructive notice of the fraud that would start the statute of limitations because there was not only concealment, but fraud and breach of trust and confidence. These cases were cited and followed in *Hinze v. Hinze,* 76 Kan. 169, 90 Pac. 762, where it appeared that during the transaction of obtaining the deed the husband acted as the agent of his wife and concealed from her the fact that the title was not taken in her name. In *Causemaker v. DeRoo,* 153 Kan. 648, 113 P. 2d 85, the question of when the recording of the deeds puts a party on notice, the court stated:

"The recording of conveyances which are regular on their face, although given for the purpose of defrauding creditors, ordinarily constitutes constructive notice of their execution and contents, but not of the fraudulent purpose of the transfer. (Citing cases.) However, if the circumstances are such that the very making of the transfer and the terms of the instrument are of the essence of the cause of action for fraud, or are otherwise of such a character as to put a person of ordinary prudence upon inquiry as to the presence of fraud, the recording of the instrument also imparts notice of the fraudulent intent. (Citing cases.) On the other hand, where no obligation to examine

the public records exists, or where a party participating in the fraud has led the defrauded party to forego an examination of the records, the recording of the instrument may not constitute constructive notice even as to its execution and contents, or the party guilty of the fraud may not assert such constructive notice. (*Hutto v. Knowlton*, 82 Kan. 445, 449, 108 Pac. 825.)"

In *Mundell v. Franse*, 143 Kan. 139, 53 P. 2d 811, it was held the statute did not apply where the grantee in a deed obtained possession of it against the wishes and express request of the grantor and placed it of record without his knowledge. In *Cox v. Watkins*, 149 Kan. 209, 87 P. 2d 243, the statute was held not to apply to a deed which had been forged and placed of record without the knowledge of the owner of the real property; and in *Gates v. Kansas Farmers' Union Royalty Co.*, 153 Kan. 459, 111 P. 2d 1098, it was held:

"The phrase, 'discovery of the fraud,' which would start the statute (G. S. 1935, 60-306) of limitations to running, means the discovery by the person defrauded of such facts indicating he had been defrauded as would cause a reasonably prudent person to investigate, and which, if investigated with reasonable diligence, would lead to the knowledge of the fraud."

The court further held:

"The recording of a deed, in which the grantor intended to name but one grantee and which fraudulently included the name of an additional grantee, is not constructive notice of the fraud to the grantor of the deed."

Many cases supporting the holding are recited in the opinion at page 465.

Considering the statute in question in the light of our decisions above cited the trial court was justified in holding that the recording of the deed did not impart notice to the plaintiff that her name as a grantee had been omitted.

Under the evidence in plaintiff's behalf, which the court was at liberty to believe, here were young people engaged to be married. They had the worthy desire of having their own home and apparently planned to build it largely from their own earnings. The earnings of the plaintiff were about double those of the defendant. They planned to use the earnings of both in purchasing the lots and constructing a home. The oral agreement was that the title to the property should be taken in the names of both of them. She relied upon him, as she had a right to do. He did not have that done, but took the title in his own name and in the name of his mother, had the deed recorded, and did not show it to her until about three and one-half years later. In the meantime she had furnished a

large part of the cash cost of the building. Under these circumstances she had no occasion to go to the county seat and examine the records. When she did discover it she was told the deed was taken that way upon the advice of an attorney, but that her interest in it was fully protected. To have the statute in question bar her rights under such circumstances would be to assist him in committing a fraud.

Appellant argues that plaintiff's evidence disclosed she saw this deed as early as May, 1946, possibly a month or two before that. On that point we have examined the evidence carefully and conclude, as obviously the trial court did, that she was then talking about having seen the deed sometime in the months of March, April or May from plaintiff to his mother. This deed was dated March 24, 1948, and recorded the same day. She stated that sometime in March, April or May she had seen the deed which had for its sole consideration "Love and affection." The deed from Louis Papish to his mother was the only one of the two deeds which contained those words. Plaintiff testified that after she saw that deed both Louis and his mother assured her that it would not affect her interest in the property. We think that assurance was correct.

This opinion might close here were it not for the fact that in their answer defendants allege that the oral agreement relied upon by plaintiff is void under our statutes pertaining to trusts and powers (G. S. 1935, 67-401 *et seq.*), citing specifically the first section, which reads:

"No trust concerning lands except such as may arise by implication of law shall be created, unless in writing signed by the party creating the same, or by his attorney thereto lawfully authorized in writing."

We think sections 406 and 408 are applicable and must be taken into account. The former reads:

"When a conveyance for a valuable consideration is made to one person and the consideration therefor paid by another, no use or trust shall result in favor of the latter; but the title shall vest in the former, subject to the provisions of the next two sections."

Section 408 reads:

"The provisions of the section next before the last shall not extend to cases where the alienee shall have taken an absolute conveyance in his own name without the consent of the person with whose money the consideration was paid; or where such alienee in violation of some trust shall have purchased the land with moneys not his own; or where it shall be made to appear that by agreement and without any fraudulent intent the party to whom the convey-

ance was made, or in whom the title shall vest, was to hold the land or some interest therein in trust for the party paying the purchase money or some part thereof."

Counsel quote a portion of plaintiff's testimony to the effect that the purchase price of the property was $500; that Louis Papish told her he would have to borrow the money from a bank; that she knew he did not have any money of his own and that she knew he borrowed money from the bank. This overlooks her other testimony that he told her he would have to have $50 to make a down payment, and that she gave him the money to make that payment. The record clearly shows the down payment was $50. Plaintiff also testified she gave Louis Papish other sums—$50 to $100 at a time, as he told her he needed money. The record further shows that he borrowed only $205 from the bank. The court was justified in reaching the conclusion in harmony with her testimony that she paid at least the $50 down payment, and perhaps some of the other money which she gave him went toward the purchase of the property. If she made any payment which went to the purchase price of the property, the title to which was to be taken in the names of both of them, the amount of her payments upon the property compared with the cost is not material. The statute says "the purchase money or some part thereof." It was for the trial court to be satisfied from the evidence that plaintiff paid part of the purchase price of the property when it was purchased. (See *Taylor v. Walker*, 114 Kan. 614, 220 Pac. 518; *Kull v. Pearl*, 147 Kan. 329, 76 P. 2d 790.)

We find no error in the record. The judgment of the trial court is affirmed.