No. 32,640

T. M. DORSEY, *Appellee*, v. THE PROTECTION STATE BANK and J. B. WATERS, *Appellants*.

(54 P. 2d 952)

Opinion filed
March 7, 1936.

*Howard T. Fleeson, Fred W. Aley, Carl G. Tebbe* and *Wayne Coulson,* all of Wichita, for the appellants.

*Jay T. Botts,* of Coldwater, for the appellee.

The opinion of the court was delivered by

THIELE, J.: This was an action for damages based on fraud.

The allegations of plaintiff's petition, which was filed November 3, 1934, are summarized as follows: In the fall of 1932, plaintiff was the owner of a half section of land encumbered with a first mortgage for $6,000, interest being in arrears and taxes being delinquent. He was also indebted to the defendant bank in the sum of over $5,200, the debt being secured by assignment of a life insurance policy having a small cash-surrender value; plaintiff sought a loan of additional money to pay up arrearages on the real-estate loan; the bank asked for conveyance of the land, plaintiff to have two years to redeem; that later, and on October 26, 1932, plaintiff was at the bank and a deed was prepared, which plaintiff was asked to execute, and was then taken out for execution by the husband and wife; that when the deed was executed an officer of the bank, who acted as notary, told plaintiff and his wife that they had two

years in which to redeem and the use of the land; that after the deed was executed, plaintiff and the bank officers went back to the bank where the deed was delivered to the bank and the bank gave plaintiff a letter or receipt with reference to the transaction; that plaintiff and his wife believed the deed which they signed contained the substance of the terms previously agreed on, and that they relied on what the bank officer said when delivering the deed, and for that reason did not actually read the deed; that the deed did not contain the terms as to plaintiff having two years to redeem and the use of the land, as previously agreed on, and that the officers of the bank knew that no such provisions were in said deed and letter; that the representation was false and known by the bank and its officers to be false, and was made with intent to deceive plaintiff and that he should act on it; that the first time plaintiff had any knowledge he was not to have the use of the land and the right to redeem was some time after May 10, 1933, when the bank informed him it would take the wheat from the real estate; that in June he examined the record of the deed and found for the first time it contained no provisions as to his right to redeem or to retain use of the land. For our purposes it is not necessary to detail allegations with reference to plaintiff being a customer of the bank; that the land was sold to a third person, etc. Plaintiff sought to recover the value of a wheat crop growing at the time his deed was delivered, and the value of the use of the real estate for two years thereafter as compensatory damages, and also exemplary damages.

The bank and its cashier, the defendant Waters, filed substantially identical answers and an amendment thereto denying any fraud and alleging the transaction was an absolute sale of the land by plaintiff to the bank, the consideration being the cancellation and surrender of plaintiff's notes to the bank, and that after the delivery of the deed no indebtedness of plaintiff or his wife continued to exist. The charges of fraud were denied, and it was alleged that the deed was exactly what it purported to be, namely, an absolute conveyance. It was further alleged that relying upon the settlement with plaintiff and the conveyance of the land to it and in good faith believing the sale final, it sold the land to a third person, who immediately went into possession. It was further alleged that upon delivery of the deed on October 26, 1932, and contemporaneously therewith the bank delivered to plaintiff a letter containing recitals hereafter referred to. A copy of the letter was attached as an exhibit.

Plaintiff's reply says a letter was delivered under the circumstances ·set out in his petition and as a part of the plan to defraud him, and said letter was not read by plaintiff and plaintiff did not discover the fraud until on or about June 21, 1933.

The letter referred to in the petition, answer and reply, and a copy of which was attached to the amended answer, was as follows:

"THE PROTECTION STATE BANK

Protection, Kan., October 26, 1932.

"T. M. Dorsey, Protection, Kan.:

"DEAR MR. DORSEY—We are in receipt of your warranty deed conveying title of the north half of section seven, township thirty-two, range twenty (N½ sec. 7, twp. 32, R. 20), to the Protection State Bank, Protection, Kansas, subject to a mortgage in the sum of six thousand dollars ($6,000) held by the Warren Mortgage Company, of Emporia, Kansas.

"We are taking this title in payment of sum of fifty-two hundred sixty-five dollars, thirty-one cents ($5,265.31) due and owing to this bank, leaving a balance due us of two hundred fifteen dollars ($215) for which we agree to carry in form of note due not later than July 15, 1933.

"This transaction will be consummated upon the completion of the abstract showing merchantable title.

"Upon the completion of this deal, we will hand to you your insurance policy in the Mutual Life Insurance Company of New York, and return to you your assignment of said policy.    "Respectfully yours,

"THE PROTECTION STATE BANK,
"J. B. WATERS, *Cashier*."

Plaintiff's motion for a judgment on the pleadings was denied. At the conclusion of plaintiff's opening statement defendants moved for judgment on the opening statement and pleadings, which motion was denied, as was their objection to introduction of evidence. The trial proceeded, and defendants demurred to plaintiff's evidence as not providing a cause of action, and that any cause of action was barred by the statute of limitations. This demurrer was overruled. Thereafter defendants offered their evidence and the cause was submitted to a jury, which was unable to agree upon a verdict and was discharged. Shortly thereafter defendants filed notice of appeal from the rulings above noted, which rulings are likewise set out in the specifications of error. Although four rulings are mentioned, and although the argument in the briefs is somewhat divided, it is noted here that in the pleadings, opening statement, or in the evidence, there is no dispute that the letter above quoted was written and delivered simultaneously with the delivery of the deed, which it is alleged was fraudulently procured. The sole question necessary to be discussed for a determination of this appeal is· whether the

acknowledged receipt of this letter started operation of the statute of limitations. If it did, the action was commenced too late, and any one of defendants' motions or their demurrer should have been sustained; if it did not, the trial court ruled correctly.

Appellants contend that appellee's pleadings, statement and evidence show no more than that he executed a deed without reading it and delivered it at a time when he received a letter stating clearly the terms of the transaction as had and completed; that if the transaction was fraudulent of appellee's rights he had immediate notice of it, and any cause of action appellee had was barred when the action was filed.

Appellee, to support the trial court's ruling, does not contend that the letter, in content and completeness of statement, was not sufficient to give ample notice, but does contend that the execution and delivery of the deed and letter having been procured upon false representations as to what they contained, under the circumstances he was not required to read either the deed or the letter on October 26, 1932, the date of their respective deliveries, or at any time subsequent until he had some fact called to his attention sufficient to put him on inquiry. Appellants argue that appellee cannot so excuse his failure to read his deed before executing it, or if failure to read the deed was at all excusable, he was given a letter which clearly showed the transaction had not been completed, as appellee alleges it was to have been, and if appellee was defrauded, as he claims to have been, he had, through the medium of the letter, immediate notice thereof.

In the briefs of both appellants and appellee are many citations of authority dealing with the exercise of diligence in the discovery of fraud. Time and space prevent a detailed discussion thereof. There is no doubt there are exceptions to the rule that where a person is able to read the English language he is bound to know the contents of any document which he signs. Appellee seeks to bring himself within the exception that where one party procures another to sign a writing by fraudulently representing it contains stipulations agreed on when in fact it does not, and the signer, relying on such representations, is induced to omit the reading, the mere fact of singing without reading does not preclude the signer from contesting validity of the contract, nor does it put him on notice that a fraud has been committed. Such is the principle of *Tanton v. Martin*, 80 Kan. 22, 24, 101 Pac. 461, where decisions of this court are cited. But the

principle there enunciated is not decisive of the case before us. There the question was the binding effect of signing without reading the document; here the question is when the signer is bound to take notice he has been defrauded. In the Tanton case there was no showing the signer received a copy of the lease in question, nor was the question of the statute of limitations involved, and the same is true of the cases cited in the Tanton case. In the case before us while appellee's pleadings, opening statement and evidence show why he did not read the deed and discover the alleged fraud, they also show the execution and delivery of the letter which it is admitted contained a complete statement of the transaction. While the appellee's pleadings and statement make no reference to the date when the deed was recorded, nor does the testimony as abstracted show the date, a statement in the counter abstract is that it was recorded November 5, 1932. As has been stated, the action was filed November 3, 1934. It thus appears that if the question of notice depended on the time the deed was recorded, two years had not elapsed. If it depended on the letter, two years had elapsed.

A situation quite similar in principle was involved in *Hinderliter v. Bell,* 114 Kan. 857, 221 Pac. 252, where plaintiff sought to set aside a deed on the ground she was induced to sign without reading on the representation it contained certain stipulations. Her petition showed that contemporaneously with the execution of the deed a contract which set forth the entire transaction was executed and that she retained a copy thereof. After discussing effect of record of the deed as notice, this court said:

"However, the plaintiff had more than the knowledge imparted by the public records. In executing and acknowledging the execution of the instrument she had an opportunity to learn the character of the instrument and that it operated as a transfer of her interest in the land. In the petition it is stated that a copy of the contract was sent to her after the execution thereof. This she had in her possession for more than four years, and in it was the plain statement that she had on that day conveyed all her interest, right and title to the land, describing it. It also contained a full statement of the consideration for the conveyance, reciting the monthly allowances the grantees were to pay to her, the furnishing to her in sickness of medical attendance with the care of a competent nurse. This agreement not only gave her notice of the execution of the deed and the transfer, but also of the conditions that the grantees were to perform in consideration of the transfer. It furnished her knowledge of the fact, too, that the conditions to be written into the contract, namely, that the land should stand as security for performance and that an addition to the house for her use was to be erected, and also that

provision was to be made for her if she chose to move to town, were not included in it.

"Assuming that she was defrauded in the transaction she had the means of information and must be held to have had knowledge of the conveyance she had made and of the conditions embraced or omitted from the contract. This knowledge she gained or could have gained from the contract, and the slightest diligence would have revealed the things and wrongs of which she complains. One who has an instrument in her possession stating the terms and conditions of the transfer cannot shut her eyes and say that she was unaware of provisions distinctly written therein. Concealment of the transfer after it was made is not charged nor was there any attempt to throw her off her guard or divert her attention from the contents of the papers she signed nor is it averred that there was any fraud by the defendants to prevent her from ascertaining or availing herself of the contents of the papers or the record of the transfer. It must be held that she had notice of the fraud and that the cause of action accrued more than two years before her action was brought." (p. 861.)

While in the case at bar appellee did testify that some months after the transaction an officer of the bank asked him if he were going to be able to redeem, there is no claim that anyone prevented him from reading the letter delivered to him, or from examining the record of the deed; in fact, he says he did examine it about June 20, 1933. It is not necessary that we repeat what was said in the Hinderliter case, as quoted above. We have before us a case where the party claiming to have been defrauded was given a statement of the transaction as actually completed, and a statement which he was not prevented from reading at the time of receipt or at any time thereafter. He cannot now be heard to say he was under no obligation to examine it to determine whether it stated his version of the transaction. Had he read it when he received it, or when he did read it, had he taken note of the fact he should have read it promptly on its receipt by him, he would have known that he had two years from that date on which he received it to bring his action to rescind or to recover damages as the case might be.

The court erred in denying defendants' motions for judgment on the pleadings, and for judgment upon the opening statement and on the pleadings, their objections to the introduction of evidence, and in overruling their demurrer to plaintiff's evidence, and its various rulings and decisions are reversed, and the cause is remanded with instructions to render judgment for the defendants.