No. 34,944

RALPH C. GATES and MATTIE E. GATES, *Appellees*, v. THE KANSAS FARMERS' UNION ROYALTY COMPANY and THE FLAG OIL COMPANY, *Appellants*.

No. 34,945

D. F. GATES and NETTIE GATES, *Appellees*, v. THE KANSAS FARMERS' UNION ROYALTY COMPANY and THE FLAG OIL COMPANY, *Appellants*.

(111 P. 2d 1098)

Opinion filed April 12, 1941.

*C. W. Burch, B. I. Litowich, LaRue Royce, L. E. Clevenger, E. S. Hampton, R. E. Haggart,* all of Salina, and *S. H. King,* of Blackwell, Okla., for the appellants.

*Arthur R. Gates,* of St. John, *Oscar Ostrum* and *Frances K. Seeley,* both of Russell, for the appellees.

The opinion of the court was delivered by

HARVEY, J.: These were two actions to set aside mineral deeds on the ground their execution was induced by fraudulent representations. Defendants denied the alleged fraud and pleaded the statute of limitations, estoppel and laches. The pleadings in the two cases are alike except the name of plaintiff and the description of property conveyed. The issues are the same in both cases; they were consolidated for trial, and are presented together here. A trial by the

court resulted in judgment for plaintiffs. Defendants have appealed and contend plaintiffs are barred from maintaining the action by the statute of limitations, and that they are estopped from maintaining them by their acts and conduct, and by laches.

The pertinent facts necessary to be stated are sufficiently set forth in the findings of the trial court, which may be summarized or quoted as follows: On September 11, 1930, each of the plaintiffs was the owner in fee simple of a described quarter section of land. They were unfamiliar with oil and gas production and had had no experience in the sale of mineral rights and oil and gas royalties.

"3. The Kansas Farmers Union Royalty Company was organized for the purpose of creating an oil royalty pool among its stockholders by the exchange of shares of stock for mineral interests in lands owned by the stockholders. The incorporators of the company were individuals who at the time were connected with various organizations sponsored by The Farmers Union Educational and Co-Operative Union of America, Kansas Division. Among such incorporators were C. E. Brasted and C. E. Huff, respectively secretary and president of The Farmers Educational and Co-Operative Union of America, Kansas Division; W. J. Spencer and C. E. Broom, respectively president and secretary of The Farmers Union Mutual Insurance Company, and Thomas B. Dunn, secretary-manager of The Farmers Union Auditing Association. The plan of organization required the transfer of an undivided one-half interest in the oil, gas and other minerals in and under a quarter section of land as consideration for one share of stock in the company. The bylaws provided that not to exceed 25 percent of the total royalty acquired by the company could be sold for cash or exchanged for services rendered or for moneys advanced, without a majority referendum vote of all stockholders. One Aldrich Blake of Oklahoma City entered into a contract with the company to organize and promote the pool and to pay all expenses connected therewith, in return for which one-fourth of all royalties taken were to be transferred or conveyed to him or to his nominee.

"4. In the negotiations for the mineral deed executed by plaintiffs to defendants, the latter were represented by one Oscar S. Evans as their agent. In connection with the transaction, plaintiffs executed in writing an application for shares."

This was addressed to The Kansas Farmers Union Royalty Company and recited:

"We hereby apply for one share of stock in The Kansas Farmers Union Royalty Company, and attach mineral deed hereto, covering a one-half undivided interest for fifty years in all of the mineral rights in the following described land. (Description.) We hereby state and represent that there is no mortgage on the above-described land; . . . that no part of the mineral rights on the said above-described land has been previously disposed of; . . . that above-described land is leased as to record . . . that all taxes . . . are paid. . . . In making this application, it is our under-

standing that not to exceed an undivided twenty-five percent interest of the total royalty interest acquired by the company shall be sold for cash or exchanged for services rendered or for moneys advanced without a majority referendum vote of all stockholders according to the bylaws of the company. I am a member of the Kansas Farmers' Union."

Attached to the application was an instrument called "mineral deed special," by which the owner of the land and his wife, "in consideration of the sum of one dollar, cash in hand paid by the Kansas Farmers' Union Royalty Company and Flag Oil Company, hereinafter called grantees, and other good and valuable considerations, the receipt of which is hereby acknowledged, have granted, sold, conveyed, assigned and delivered, and by these presents do grant, sell, convey, assign and deliver unto said grantees an undivided one-half interest in the proportion of three-fourths and one-fourth interest therein, respectively, to the said grantees in and to all of the oil, gas and other minerals in and under, and that may be produced from" the described land. It further recited that the land is now under an oil and gas lease, as shown by the records, and that the sale was made subject to the lease, and the deed contained other provisions usual in such an instrument.

"6. Plaintiffs were induced to sign the application for shares and the mineral deed set out in finding No. 5, on the strength of false assertions and representations made by Oscar S. Evans to them as follows:

"(a) That The Kansas Farmers' Union Royalty Company then held royalty deeds to a one-half interest in the royalty or minerals in and under at least two quarter sections of land in each township in McPherson and Rice counties, Kansas, and also in many of the townships in Barton and Pawnee counties, and on several quarter sections of land in Stafford county, Kansas. As a matter of fact, at such time, the company held only a three-eighths interest in the minerals in and under not more than eight quarter sections of land in McPherson county. There are twenty-five townships in said McPherson county. The acreage held is scattered among five townships in said county. At such time the company held no royalties at all in Rice, Barton and Pawnee counties, and only under one quarter in Stafford county.

"(b) That said company at that time held and owned one-half of the royalty or minerals on several tracts close in to production and to drilling wells, and within one-half mile thereof, in McPherson county, and within one-half mile of the Raymond pool in Rice county. As a matter of fact, all the royalty held by the company in McPherson county was located at least two miles from the nearest production, and the company had no royalty within half a mile of the Raymond pool in Rice county and in fact had no royalty whatsoever in that county, and none anywhere nearer production than that in McPherson county.

"(c) That The Kansas Farmers' Union Royalty Company was a part of The Kansas Farmers Union which was the name commonly used for The

Farmers Union Educational and Co-Operative Union of America, Kansas Division. As a matter of fact, said companies were distinct and separate organizations. At the time of said transaction on September 11, 1930, plaintiff R. C. Gates was a member in good standing of the latter company.

"(d) That the mineral deed executed by plaintiffs conveyed an undivided one-half interest in the oil, gas and other minerals in and under the northeast quarter of section 34-21-13, Stafford county, Kansas, to The Kansas Farmers' Union Royalty Company, whereas in truth one-fourth of the mineral interest conveyed was thereby transferred to the Flag Oil Company.

"7. On September 11, 1930, prior to the execution of the deed in question, plaintiffs knew from reading the application for shares that the company, under its bylaws, could sell or exchange for services not to exceed 25 percent of the total royalty interest acquired by the company, without a referendum vote of the stockholders. Evans stated and represented to R. C. Gates that he would fill out the deed in accordance with the application and immediately filled in the deed and thereafter stated to the grantors that the deed was written up in accordance with the application. Evans retained possession of the deed until it was presented for execution before the notary public at the bank in Seward. Plaintiffs did not read the deed before signing same. They relied instead upon the statements of Evans that the deed was prepared in accordance with the application for shares and understood thereby that the entire one-half interest in the royalty on their land was conveyed to the royalty company, subject, however, to the right of said royalty company to sell or exchange for services not to exceed 25 percent of the royalty conveyed to it. Evans also represented to plaintiffs that there was no present need to draw on the 25 percent interest for expenses because the lease rentals then being received by the royalty company were more than enough to take care of all expenses.

"8. Plaintiffs did not learn until in the summer of 1934 that the representations made by Evans with reference to the royalty holdings of the company in McPherson, Rice, Barton, Pawnee and Stafford counties were false. Discovery was brought about by investigation following information through the newspapers to the effect that suits had been filed in Russell county, Kansas, questioning the validity of certain royalty deeds made to The Kansas Farmers' Union Royalty Company. Shortly after that time, plaintiffs also first received actual knowledge of the fact that one-fourth of the mineral interest conveyed under the deed went to the Flag Oil Company. Plaintiffs did not learn that The Kansas Farmers' Union Royalty Company was not a part of The Kansas Farmers' Union of Kansas until in the year 1937.

"9. In September, 1930, plaintiffs' land was subject to an oil and gas lease. Production was found within three-fourths of a mile of the Gates land in 1933, but thereafter the lease on plaintiffs' land was dropped and the land remained unleased for a time during the pendency of the present action.

"10. Plaintiffs have tendered into court for cancellation the share of stock issued as consideration for the mineral deed in question in this case.

"11. Plaintiff relied upon the representations made by Evans (a) as to the number, amount and location of the royalties held by the royalty company in McPherson, Rice, Barton, Pawnee and Stafford counties; (b) that the royalty· company held royalty close to production (within half a mile) in McPherson

county, and within half a mile of the Raymond pool in Rice county; (c) that The Kansas Farmers' Union Royalty Company was a part or branch of The Kansas Farmers' Union of Kansas; (d) that the deed executed by plaintiffs conveyed all the one-half interest in the minerals covered thereby to The Kansas Farmers' Union Royalty Company. Plaintiffs would not have executed the deed in question had they not relied upon the aforesaid false representations made by Evans as true.

"12. The court finds that the representations inducing the plaintiffs to sign the application and the mineral deed, which representations are set forth in paragraph No. 6 of these findings, were all false and untrue, and were known by all of the defendants to this case to be false and untrue, and they were made for the purpose of deceiving the plaintiffs, and for the purpose of inducing the plaintiffs to execute the application for membership and the mineral deed involved in this action, and such representations did induce the plaintiffs to execute the application for shares, and the mineral deed involved in this action and referred to herein.

"13. The mineral deed executed by the plaintiffs to the defendants was recorded in the office of the register of deeds of Stafford county, Kansas, on November 24, 1938 [1930], in Book 1 of Royalty Record, page 455.

"14. This action was commenced August 24, 1934, to cancel and set aside the mineral deed referred to in these findings.

"15. Plaintiff R. C. Gates, on September 11 and 13, 1930, was possessed of more than average intelligence, ability and experience, and had held public office in Stafford county.

"16. On or about November 17, 1930, the plaintiffs received a check signed by 'The Planters State Bank, trustee for Farmers' Union Royalty Company of Kansas,' for the sum of $1. This check was received by the plaintiffs before they had learned or had any knowledge of, or reason to believe, that they had been tricked into the execution of the mineral deed and the application for the stock, and the court believes that this check was made for the purpose of furthering the fraud practiced upon the plaintiffs, and that they were delivered for the purpose of endeavoring to perpetuate the fraud practiced upon the plaintiffs. It will be noticed that this check was dated November 17, 1930, about two months after the mineral deeds had been delivered to the defendants, and the court is of the opinion that there was no money whatever in the hands of the treasurer from the operation of the corporations to pay any dividends, and that the money for this dividend was advanced by somebody in the interests of the company in order to get stockholders who had been defrauded, to accept a dividend with the purpose of thereby estopping the plaintiffs in this case and others from bringing a suit to cancel mineral deeds on account of misrepresentation and fraud. It will be noticed that this dividend check was mailed while the company was actually seeking new members, and that no dividends whatever have been paid since the corporations have ceased seeking new members and new mineral deeds. Notwithstanding the fact that the company has undoubtedly collected considerable money for delay rentals from leaseholders and notwithstanding that they now have one producing oil well, no dividends whatever have been paid since the nominal payment above referred to.

"In order for the plaintiffs in this case to be estopped by reason of the acceptance of this dividend check, it would be necessary for the plaintiffs to have known at the time of accepting and cashing the check, that the representations made by the defendants were false and untrue. The plaintiffs did not learn of the fraud practiced upon them until long after the check had been received and cashed, and therefore there could be no estoppel.

"17. The evidence fails to disclose that the plaintiffs ever executed any proxy to anyone to represent them at any meeting of the defendant companies, and fails to disclose that the plaintiffs ever participated in any manner in any meetings of the stockholders of the defendant companies.

"18. The books, records and files of the Kansas Farmers' Union Royalty Company have been kept at its office in Salina, Kan., from the time of its organization to date.

"19. One of the claims of the defendants at the trial was that the plaintiffs could have learned by examining the records in the register of deeds offices of McPherson, Rice, Barton, Pawnee and Stafford counties, that the defendants did not, at the time of the taking of the mineral deed and application, have and hold royalty deeds as represented by the defendants and set out in paragraph No. 6, subdivisions 'a' and 'b.' The records in the offices of the register of deeds of these several counties would not have reflected what royalty deeds were held by the defendants for the reason that the defendants may have had, and in fact did have, many royalty deeds which were never recorded. So, that the plaintiffs could not have learned of this misrepresentation by a mere examination of the records in the offices of the several registers of deeds."

### The court made the following conclusions of law:

"1. The court finds as a conclusion of law that the plaintiffs are not estopped by any act of theirs from obtaining a decree cancelling the mineral deed and quieting the title of the plaintiffs to the real estate involved.

"2. The court finds that the action is not barred by the statute of limitations.

"3. The court finds as a matter of law the plaintiffs are not estopped by reason of the acceptance of the dividend check for $1 for the reason that the check was given by the defendants as a part of the general scheme to defraud the plaintiffs and for the reason that the plaintiffs, at the time of accepting the dividend check, had not learned of any of the fraud practiced upon them by the defendants, and, therefore, could not have waived the fraud, and this court can require, as a condition of the cancellation of the mineral deed, that the plaintiffs return the $1 dividend received by them, plus interest at six percent, so that the defendants will not lose or suffer in any respect by reason of the acceptance of the dividend.

"4. The court finds that the mineral deed should be canceled and set aside, and held for naught, and the title of the plaintiffs quieted against the defendants."

### Judgment was rendered accordingly.

In the trial court defendants moved to set aside the court's findings as not being supported by the evidence and as being contrary

to the evidence. This motion was overruled, as was also their motion for a new trial. In this court, while the findings are criticised by appellants, the criticism goes largely to the weight which should have been given to the evidence. There is no contention that the findings of the court of the fraud which induced the execution of the mineral deeds are not supported by substantial competent evidence. Appellants' sole contentions are that the appellees are barred from obtaining relief from the fraud found by the statute of limitations and by estoppel and laches.

The pertinent portion of the statute of limitations (G. S. 1935, 60-306) relied upon by appellants reads:

"Civil actions, other than for the recovery of real property, can only be brought within the following periods, after the cause of action shall have accrued, and not afterwards: . . . Within two years; . . . an action for relief on the ground of fraud—the cause of action in such case shall not be deemed to have accrued until the discovery of the fraud."

The principal fraud found by the court was from dates in September to November, 1930. The action was not filed until in August, 1934. The trial court found the fraud relied upon by the plaintiffs which induced the execution of the deeds was not discovered by them until the spring and summer of 1934.

Appellants contend plaintiffs should have discovered the fraud earlier and at some time more than two years prior to the date the action was brought. The phrase "discovery of the fraud" as used in the section above quoted means the discovery by the person defrauded of such facts indicating he has been defrauded as would cause a reasonably prudent person to investigate, and which, if investigated with reasonable diligence, would have led to knowledge of the fraud. (*Duphorne v. Moore*, 82 Kan. 159, 107 Pac. 791; *Mateer v. Land Co.*, 91 Kan. 349, 137 Pac. 786; *Horne v. Curtis*, 105 Kan. 371, 184 Pac. 719; *City of Coffeyville v. Metcalf*, 134 Kan. 361, 5 P. 2d 807; *Bluff City v. Western Light & Power Corp.*, 137 Kan. 169, 19 P. 2d 478; *Malone v. Young*, 148 Kan. 250, 81 P. 2d 23; *Bradrick v. Woodward*, 148 Kan. 784, 84 P. 2d 885; *Travis v. Glick*, 150 Kan. 132, 91 P. 2d 41; *Simmons v. Clark*, 151 Kan. 431, 99 P. 2d 739.)

A mere suspicion of fraud is not sufficient. (*Marbourg v. McCormick*, 23 Kan. 38; 37 C. J. 946.)

As found by the trial court, the fraudulent representations made by defendants' representative, relied upon by plaintiffs and which induced them to execute the mineral deeds, consisted of four groups

of false representations (see finding 6): (a) The large number of mineral deeds held by The Kansas Farmers' Union Royalty Company in certain counties. It is argued plaintiffs could have gone to the office of the register of deeds in each of the counties and ascertained exactly how many mineral deeds the company held in that county. This could not have been done, for the company had mineral deeds which it never had recorded. More than that, there is nothing in the court's findings, and we are cited to nothing in the evidence, which would cause plaintiffs to suspect the representations of defendants' representative were false in that particular until in February, 1934. (b) That the company held mineral deeds on several tracts within a half mile of production and drilling wells in McPherson county and that near to the Raymond pool in Rice county. Appellants argue those facts could have been discovered by a search of the records in the office of the register of deeds in McPherson and Rice counties. For reasons previously stated that could not have been done, and no reason was shown for plaintiffs to make such a search or other inquiry respecting such matters until the court found they did so early in 1934. (c) That The Kansas Farmers' Union Royalty Company was a part of The Kansas Farmers' Union, with the organization of which plaintiffs were familiar, since they were members of it. Appellants argue that the very name indicates the difference. But even the difference in name does not disclose the fact that The Kansas Farmers' Union Royalty Company was not a part of the Kansas Farmers' Union. (d) That the mineral deeds executed conveyed rights only to The Kansas Farmers' Union Royalty Company. Appellants argue the deeds on their face show that one-fourth of the mineral interest which passed by the deeds was conveyed to the Flag Oil Company. Appellants make no specific complaint of the finding of the trial court (No. 7) to the effect that appellants' representative handled the execution of that deed so the grantors would not discover the fact that the Flag Oil Company was one of the grantees. The name Flag Oil Company did not appear in the application for membership signed by plaintiffs. That application did disclose that The Kansas Farmers' Union Royalty Company had authority by a vote of its members to use not more than one-fourth of the mineral interest conveyed for operating expenses, but plaintiffs' evidence was to the effect that defendants' representative at the time the application was made assured plaintiffs that none of the mineral rights had been disposed of by The Kansas Farmers'

Union Royalty Company, and that there would be no necessity of doing so. So, up to the time the mineral deeds were in fact executed there had been nothing in writing to indicate the Flag Oil Company had any interest in the matter, and the testimony of plaintiffs, to which apparently the court gave credence, was to the effect there had been no oral representation of that character. Appellants point out that the deed was recorded November 24, 1930, and they stress the contention that plaintiffs, by examining the recorded deeds any time after they were recorded, could have ascertained the fact that by them a share of the mineral rights passed to the Flag Oil Company, hence could have learned that fact much earlier than two years before the action was brought. In support of this argument they cite many of our cases in which it has been held in effect that the recording of a fraudulent deed is constructive notice of the fraud. Without attempting to make a complete list, see the following: *Black v. Black,* 64 Kan. 689, 68 Pac. 662; *Hutto v. Knowlton,* 82 Kan. 445, 108 Pac. 825; *Underwood v. Fosha,* 96 Kan. 549, 152 Pac. 638; *Davis v. Heynes,* 105 Kan. 75, 181 Pac. 566; *Foy v. Greenwade,* 111 Kan. 111, 206 Pac. 332; *In re Estate of McFarland,* 118 Kan. 534, 235 Pac. 832; *Pinkerton v. Pinkerton,* 122 Kan. 131, 251 Pac. 416; *Smith v. Rector,* 135 Kan. 326, 10 P. 2d 1077; *Dorsey v. Protection State Bank,* 143 Kan. 398, 54 P. 2d 952; *Keys v. Steele,* 143 Kan. 826, 57 P. 2d 28.

Even if this contention were held to be well taken we think it would be of no avail to appellants in this case because there are three groups of fraudulent representations found by the court to which the principle would not apply. Each of the cases cited by appellants may be distinguished from the one before us. None of the cases was brought by the owner of property who had executed a deed thereto to set it aside because of the fraudulent inclusion therein of the name of a grantee. An owner of real property is not bound in such a way as to start the running of the statute of limitations by constructive notice of the recording of a deed to which his name as grantor has been forged (*Cox v. Watkins,* 149 Kan. 209, 87 P. 2d 243); neither is the recording of a deed executed by the owner of a property constructive notice to the grantor of the fact that there had been fraudulently included in the deed a description of property other than that which the grantor had intended to convey so as to start the running of the statute of limitations. (37 C. J. 944; *Webb et al. v. Logan et al.,* 48 Okla. 354, 150 Pac. 116; *Ford v. Perry,* 66 Okla. 150, 168

Pac 221; *Stocklassa v. Kinnamon,* 132 Okla. 139, 269 Pac. 1080; *Davis v. Monroe,* 187 Pa. 212, 41 Atl. 44; *Madole v. Miller, Appellant,* 276 Pa. 131, 119 Atl. 829.)

We think the same rule would apply to the fraudulent insertion in the deed of another or different grantee than that intended to be used by the grantor, although counsel have cited no cases on that point and our limited time for research has disclosed none. In *Donaldson v. Jacobitz,* 67 Kan. 244, 72 Pac. 846, a suit by a creditor to set aside a deed, for which it was alleged the debtor had paid the consideration by taking the title in the name of his wife, the rule that the recording of the deed furnished constructive notice to the creditor and started the running of the statute of limitations was applied. But even that case is distinguishable from this. Here it is the grantor, not the creditor of a supposed grantee, who is complaining of the fraud practiced upon him. Normally, an owner of the property who executes a deed therefor has no occasion to examine the record after the deed is recorded to ascertain if a fraud has been committed upon him by the inclusion of additional real property or an additional grantee. Certainly we think that would be true in the absence of any fact or circumstances which would cause a reasonably prudent grantor to suspect fraud practiced upon him in that manner.

Appellants complain plaintiffs were estopped by their acts and conduct from maintaining the action. This rests primarily upon the fact as found by the court that in November, 1930, shortly before the mineral deeds were filed for record, The Kansas Farmers' Union Royalty Company sent to each of plaintiffs a check for $1—which plaintiffs cashed—purporting to represent a dividend. Respecting that, the court found that this was a part of the scheme and plan of defendants to defraud plaintiffs and that in fact the company had no money on hand from which it could pay dividends. We are unable to say as a matter of law that the finding and conclusion of the court on that point were incorrect. Appellants argue that plaintiffs executed proxies for someone to represent them at meetings. The court was unable to find that such proxies were sent, which is really a finding against appellants on that point. This finding is complained of on the ground that it was contrary to evidence. In support of that complaint appellants quote the testimony of one of plaintiffs to the effect that he did send a proxy. What other evidence there was bearing upon the question is not disclosed. It is quite

clear, however, that if any proxy was sent it was before plaintiffs had knowledge of the fraud which had been practiced upon them. It is argued plaintiffs attended certain meetings. These were likewise before they had knowledge of the fraud, and there is no showing that at any meeting which they may have attended or for which they may have sent proxies was any business transacted that would enable one present to discover the fraud more than two years prior to the bringing of the action. Appellants also contend plaintiffs were guilty of laches in not discovering the fraud sooner. We find nothing in the record that would justify us in holding as a matter of law that plaintiffs were estopped either by their acts or conduct, or by laches, from maintaining the actions.

We find no error in the record. The judgment of the court below is affirmed.