No. 35,274

Roy N. McCue, as Trustee, etc., *Appellant,* v. H. B. Franklin
et al., *Appellees.*

(131 P. 2d 704)

Opinion filed December 12, 1942.

Lester M. Goodell, of Topeka, argued the cause, and Irwin Snattinger, B. J. Lempenau, J. L. Hunt, Margaret McGurnaghan, John H. Hunt and George M. Brewster, all of Topeka, were on the briefs for the appellant.

T. M. Lillard, of Topeka, and Dupuy G. Warrick, of Kansas City, Mo., argued the cause, and O. B. Eidson, Philip H. Lewis, James W. Porter, all of Topeka, Paul G. Koontz and Leland Hazard, both of Kansas City, Mo., were on the briefs for the appellees.

The opinion of the court was delivered by

ALLEN, J.: This was a suit begun by plaintiff as trustee under an issue of corporation bonds to recover the amount of an unpaid judgment representing the value of the unpaid principal and interest on the bonds. Judgment had previously been secured foreclosing the mortgage securing the bond issue against the property covered by the mortgage and against the mortgagor. The property proved insufficient to satisfy the judgment and the mortgagor was insolvent. In this suit it is sought to recover the amount still due on the judgment from the defendant Fox Kansas Theatre Company and certain individual defendants on the theory the defendant corporation and the defendant individuals had caused the depreciation of the mortgaged property and the insolvency of the original mortgagor. The trial court sustained the various demurrers leveled against the petition by all of the defendants, and plaintiff has appealed.

The petition is divided into three causes of action, denominated counts. The petition, together with the exhibits attached thereto, is quite long. Before referring to the particular causes of action it will be helpful to recount briefly a few of the facts which are alleged as common to all of the causes of action.

In 1928 and for some time prior to that date the Kansas Amusement Company, a Kansas corporation, was and had been the owner of a long-term leasehold on certain lots in the city of Topeka on which is situated a theater then known as the Novelty. In December, 1928, the company issued its bonds for the total sum of $75,000, secured by a mortgage on its property. The money so secured was used by the Amusement Company for remodeling and reëquipping the theater. Plaintiff now represents the holders of the unpaid balance of the bonds so issued.

The petition alleges that at the time of the bond issue the Novelty

Theatre had been in operation since 1908, and had for many years enjoyed a very substantial and profitable business.

Sometime in 1929 the Crawfords, who owned the capital stock of the Kansas Amusement Company, sold the stock to the Midwest Theatres, Inc. The Midwest was a Delaware corporation admitted to do business in Kansas. The Midwest company held all of the stock of the Kansas Amusement Company except seven shares, which were transferred to the seven individuals who are joined as defendants, so that these individual defendants might act as directors of the Kansas Amusement Company. These men were officers, directors and agents of the Midwest company. Later in 1930 the defendant Fox Kansas Theatre Company, a Delaware corporation, hereinafter referred to as Fox Kansas, was formed and succeeded to the property of the Midwest company. Fox Kansas took over the stock of the Kansas Amusement Company owned by the Midwest with the exeption of the qualifying shares which remained in the names of the individual defendants who remained as directors of the Kansas Amusement Company and became officers in the new Fox Kansas Theatres Company. Without setting out all the matters detailed in the petition, it can be noted that the petition alleges the Midwest, and its successor the Fox Kansas, were and are part of the Fox theater interests owning theaters in Kansas and other states. The petition points out that with the acquisition of control over the Novelty Theatre, the Fox interests controlled 90 percent of the theater facilities in the city of Topeka; that the Novelty was one of the three large theaters in the city, all of which had about the same seating capacity. The other two large theaters were the Grand and Jayhawk which, together with other smaller theaters, were and are owned by Fox Kansas.

The petition alleges that for the purpose of eliminating competition for its own theaters Fox Kansas, through the individual defendants, caused some sort of an oral lease to be entered into between the Kansas Amusement Company and the Midwest, and later Fox Kansas took the place of the Midwest in this agreement. Under this agreement the Fox companies took possession of the Novelty. Immediately thereafter the Novelty was closed and was never reopened, except for some ten weeks, during all the period from 1929 until the foreclosure of plaintiff's mortgage in 1938. The Fox interests kept their own men in office as directors and officers of the Kansas Amusement Company down to the time of the foreclosure.

The office of the Kansas Amusement Company was moved first to California to the office of the Fox Kansas, and later to Kansas City, Mo., when Fox Kansas moved its office to that city. The salaries of the Amusement Company's officers were paid by Fox Kansas; those officers spent their entire time furthering the interests of the Fox company and were entirely subservient to the dictates of the Fox company to the exclusion of the interests of the Kansas Amusement Company. No fixed rent was paid or agreed to be paid by the Fox Kansas or the Midwest for the use of the property of the Amusement Company. The Fox company is simply alleged to have transferred funds to the use of the Amusement Company from time to time to keep the lease in force and to pay current interest on the bonds of the Amusement Company.

In 1934 the interest and part of the principal of the bonds of the Kansas Amusement Company had fallen into default, and on August 28, 1934, a written agreement was entered into between the Kansas Amusement Company, the Fox Kansas Theatres Company, the then acting trustee under a mortgage securing the bonds, and a committee representing the bondholders. The agreement stipulated that the future interest on the bonds should be reduced from six and one-half percent per annum to five percent after June 1, 1934, until December 1, 1938; further, the bonds maturing before December 1, 1938, were to be extended to that date. In consideration of these concessions, Fox Kansas agreed to pay the full amount of interest due to June 1, 1934. Further provisions of this agreement will be hereinafter stated.

The first cause of action is based upon the theory that the defendant corporation and the individual defendants violated the duty they owed the Kansas Amusement Company as officers and stockholders; that they wrongfully and fraudulently used the Amusement Company for the benefit of the Fox Company in utter disregard of the interests of the Amusement Company and its bondholders. In arguing the merits of this cause of action, counsel refer to cases such as *Farmers L. & T. Co. v. N. Y. & N. R. Co.*, 150 N. Y. 410, 44 N. E. 1043; *Green v. People's Gaslight & Coke Co.*, 192 N. Y. S. 232; *Santa Fe E. Co. v. Hitchcock*, 9 N. Mex. 156.

But the court is of the opinion it cannot now decide the question attempted to be presented under this cause of action. The theory of the action sounds in tort, that is, it is alleged the defendants formed a conspiracy to use the Amusement Company for the bene-

fit of the Fox interests and in furtherance of the conspiracy did the things which have been detailed above. The defendants by their demurrers have raised the statute of limitations, and despite the usual rule that a petition which has not been challenged by motion is entitled to liberal construction and the benefit of all favorable inferences on demurrer, the court is constrained to hold the action to be barred under G. S. 1935, 60-306, *third*. Conceding the wrongs relied upon would partake of a species of fraud, the facts stated are sufficient to put the bondholders and their representative trustee upon notice. True, it is alleged, the wrongs were not discovered; that the defendants paid interest, and did other acts for the purpose of concealing their designs from the bondholders. But the theater was closed in 1929 or 1930. The ownership of the stock and the identity of the officers of the Amusement Company was a matter of public record. In 1934 the bondholders treated with the Fox interests concerning the default in the bonds. It appears clear the same officer signed the contract of 1934 referred to above on the part of the Amusement Company and the Fox Kansas. The bond holders knew the theater was closed; that it was held at the sufferance of the Fox Kansas, and that the theater was losing good will and business all the time. If they deemed such a situation dangerous to the interest of the Amusement Company and to their rights as bondholders they should have acted within the period of the statute of limitations. This court has held repeatedly the statute of limitations as to an action sounding in fraud will not be tolled after facts have come to the attention or are charged to the attention of the injured party which should put him on notice of the fraud. (*Gates v. Kansas Farmers' Union Royalty Co.*, 153 Kan. 459, 111 P. 2d 1098, and cases cited.)

The theater was closed in 1929; this suit was begun April 8, 1940. The action set out in the first "count" of the petition came too late.

The second cause of action sets up particularly that the Amusement Company had become a mere tool of the Fox Kansas, and that the corporate entity of the corporations should be ignored. The facts alleged might warrant the court holding the corporate entities could be disregarded if such a ruling would promote justice. Appellant refers to many cases from this and other courts to that effect. If those cases could be followed, the facts alleged in the petition would indicate the Amusement Company had been merged and consolidated with the Fox Kansas to form in reality one cor-

poration. In such a situation the Fox Kansas might be liable for the debts of the Amusement Company. (19 C. J. S. 1392 *et seq.*)

Plaintiff also argues under this second cause of action that he should recover on the theory the defendants induced a breach of contract on the part of the Amusement Company.

The last theory would seem to sound in tort while the first theory advanced under this cause of action would seem to sound in contract. Considered as an action *ex delicto* it was barred, but if *ex contractu* then we must examine the provisions of the agreement of 1934, above mentioned. That agreement provided:·

"However, excepting the foregoing payment of interest, second party (Fox Kansas) is not obligated to pay either interest or principal on said bond issue heretofore or hereafter maturing."

The provision is short and to the point. The bondholders by this provision at a time when they knew the Amusement Company was owned and controlled by the Fox interests and their alleged minions, contracted with the Fox Kansas in consideration of the payment of certain moneys in cash by the Fox Kansas that they would not look to the Fox Kansas for further payment. That is the only construction the court has been able to put upon the above quoted provision in the contract. Here we find plaintiff's predecessor in the office of trustee and the committee representing the bondholders expressly recognizing the corporate entity of the Amusement Company and agreeing the Fox Kansas shall not be liable.

In *New York Trust Co. v. Carpenter*, 250 Fed. 668, bondholders contracted with a "parent" company and its subsidiary on the basis the bonds of the subsidiary then in default should be paid out of the funds and property of the subsidiary. When this plan failed the court held the bondholders having recognized the corporate entities of the two corporations with knowledge of the facts could not insist upon a disregard of those entities and so hold the "parent" company on the bonds.

So, in the case before us it would seem impossible to consider the question of whether the corporate entities of the corporations should be disregarded or to consider any theory advanced under the second cause of action for holding the Fox Kansas liable for the amount due on the bonds.

The third cause of action is based upon a claimed violation of the antitrust laws of Kansas. (G. S. 1935, 50-101 *et seq.*) In addition to the summary of the general allegations of the petition al-

ready made, allegations made specifically under this cause of action may be summarized as follows:

At or about the time the Fox company acquired the theater properties in Topeka, it entered into a conspiracy and agreement with the eleven major film companies and film distributing companies, by which the eleven companies agreed they would neither rent nor allow the exhibition of any of their pictures in Topeka until they had been first offered to the Fox company and until such films had been rejected by it. The films so rejected by the Fox company were then leased to motion picture exhibitors other than the Fox company at a price or rental which was uniformly higher than that paid for the choice pictures acquired by the Fox company. It was further provided in the agreement that after pictures accepted by the Fox company had been shown in theaters owned by it, those films could not be leased by the film distributing companies to motion picture exhibitors other than the Fox company for second-run pictures until after a specified time had elapsed. This agreement is alleged to have remained in force at the time of the default on the bond issue in question and to be still in force at the present time.

Assuming that the facts alleged show a violation of the Kansas statutes relating to monopolies, trusts and unfair trade practices, plaintiff is again faced with the bar of the statute of limitations.

As already noted, the bondholders and the predecessor of the present trustee held an interest in the property at the time the Amusement company was taken over by the Fox interests; the closing of the theater was unconcealed and publicly announced; the bondholders knew or could have discovered the ownership of the stock of the Amusement Company by the Fox interests and the identity of the directors of the various corporations. Under the facts alleged the plaintiff's cause of action accrued in 1929 or 1930.

Our statute G. S. 1935, 60-306, *second*, provides that actions upon a liability created by statute can only be brought within three years. Under paragraph *three* of the same section, tort actions are barred in two years. The suit was not brought until 1940, and the third cause of action is barred whether it is an action for injury to the plaintiff not arising out of contract or an action upon a liability created by statute.

The rulings of the trial court upon the several demurrers were correct. The judgment is affirmed.

WEDELL, J., concurs in the result.

HARVEY, J., dissents.

SMITH, J. (dissenting in part): I find myself unable to agree altogether with the opinion of the majority. Very briefly, my idea is that the demurrer should have been overruled as to the first cause of action. I do not think the acts to which the petition refers, which the majority opinion says should have put the bondholders upon notice, should be given such a construction. I believe that they were all part of the fraud with which the cause of action charges the defendants. For that reason I dissent from so much of the opinion as deals with the demurrer to the first cause of action.